**Exhibit A**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | [ ] FEPA<br>[X] EEOC | 470-2020-00271 |

| INDIANA CIVIL RIGHTS COMMISSION | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone | Year of Birth |
|---|---|---|
| MR. WESLEY A TEDROW | (317) 893-4303 | |

| Street Address | City, State and ZIP Code |
|---|---|
| 286 MELROSE LANE,  GREENWOOD, IN 46142 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| ARLINGTON ELEMENTARY SCHOOL | 15 - 100 | (317) 782-4274 |

| Street Address | City, State and ZIP Code |
|---|---|
| 5814 S ARLINGTON AVE,  INDIANAPOLIS,  IN 46237 | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

[ ] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
[X] RETALIATION  [ ] AGE  [X] DISABILITY  [ ] GENETIC INFORMATION
[ ] OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **01-01-2018**   Latest **10-04-2019**

[ ] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I, WESLEY TEDROW, STARTED WORKING FOR THE FRANKLIN TOWNSHIP SCHOOL CORPORATION ON OR ABOUT JULY 2012 AND BY JUNE OR JULY OF 2015 I STARTED WORKING AT THE ARLINGTON ELEMENTARY SCHOOL (AES) AS A 3RD GRADE TEACHER. RECENTLY I WAS TEACHING THE 4TH GRADE CLASS AND MY MOST RECENT SUPERVISOR WAS MELISSA MORRIS. THE MAIN DUTIES OF MY JOB WERE (BUT NOT LIMITED TO): TEACH CURRICULUM, COLLABORATE WITH COLLEAGUES ON PLANNING INSTRUCTIONS FOR THE STUDENTS.
DURING MY TIME WORKING FOR AES THERE WERE ALWAYS WAY MORE FEMALE TEACHERS THAN MALES, AND THE TREATMENT GIVEN TO THE FEMALE TEACHERS WAS ALWAYS NOTICEABLY BETTER.
AROUND OCTOBER OR NOVEMBER OF 2017, I REQUESTED 6 WEEKS FMLA FOR TREATMENT OF MENTAL DISABILITY. AFTER COMING BACK FROM FMLA, I WAS TOLD THAT I HAD PERFORMANCE ISSUES AND THAT THE SCHOOL COWORKERS HAD CONCERNS ABOUT ME, THAT I WAS AN INTIMIDATING MUSCULAR MALE. I WAS REQUESTED TO GO FOR A SCHOOL PROVIDED MEDICAL EVALUATION, AND EVEN AFTER PROVIDING DOCUMENTATION FROM MY OWN DOCTOR THAT I WAS FIT FOR DUTY, THE SCHOOL STILL REFUSED TO TAKE ME BACK AND HAS ME ON PAID ADMIN LEAVE SINCE OCTOBER 4TH, 2019.  I HAVE HAD ONE OTHER

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally signed by Wesley Tedrow on 11-22-2019 03:37 PM EST** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 470-2020-00271 |

| INDIANA CIVIL RIGHTS COMMISSION | and EEOC |
|---|---|
| *State or local Agency, if any* | |

TEACHING JOB AT A DIFFERENT INSTITUTION RESCINDED AND OTHERS DENIED DUE TO MISLEADING OR FALSE REFERENCE BEING PROVIDED TO THOSE INSTITUTIONS ABOUT ME.'

I BELIEVE THAT I WAS RETALIATED AGAINST AND DISCRIMINATED FOR HAVING A DISABILITY, IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA) AND FOR BEING A MALE TEACHER. UNDER ALL THESE CIRCUMSTANCES, I WANT TO FILE A CHARGE AGAINST ARLINGTON ELEMENTARY SCHOOL, BASED ON DISABILITY DISCRIMINATION AND ALSO BASED ON SEX (MALE) DISCRIMINATION, RETALIATION FOR OPPOSING A DISCRIMINATORY PRACTICE, IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED.
I ALSO BELIEVE THAT A CLASS OF EMPLOYEES HAVE BEEN DISCRIMINATED AGAINST BASED ON THEIR SEX (MALE), IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally signed by Wesley Tedrow on 11-22-2019 03:37 PM EST** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

**Exhibit B**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 470-2020-03460 |

| Indiana Civil Rights Commission | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Mr. Wesley A. Tedrow** | **(317) 893-4303** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **286 Melrose Lane, Greenwood, IN 46142** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **FRANKLIN TOWNSHIP COMMUNITY SCHOOL CORPORATION** | **500 or More** | **(317) 782-4274** |

| Street Address | City, State and ZIP Code |
|---|---|
| **5814 S. Arlington Ave.,  Indianapolis, IN 46237** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN | Earliest: **11-22-2019**  Latest: **11-22-2019** |
| ☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION | |
| ☐ OTHER *(Specify)* | ☒ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

1.     On November 22, 2019, Charging Party filed EEOC Charge Number 470-2020-00271.

2.     On December 4, 2019, Arlington Elementary School (AES) notified Charging Party of its preliminary decision to cancel Charging Party's contract due to his insubordination for refusing to agree to full and unmitigated access to his entire medical/psychological medical records and because of his "lack of fitness for duty."

3.     The required release violates the ADA's prohibition of disability related inquiries that are not job-related and consistent with business necessity. 42 U.S.C. 12113(d)(4)(A) and GINA's prohibit of seeking to acquire genetic information in the form of family medical history. 42. U.S.C. 2000ff-1(b).

4.     Additionally, the FFD examiner did not find Charging Party as unfit for duty. Instead, the examiner specifically noted that Charging Party's FFD examination was "inconclusive" because of

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.  SIGNATURE OF COMPLAINANT |
| X 8/10/20  X *Wesley A. Tedrow*  Date     Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 470-2020-03460 |

| **Indiana Civil Rights Commission** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

Charging Party's refusal to release his entire medical/psychological history/records.

5.      Charging Party submitted fitness for duty recommendations from his primary care physician and psychiatrist who both acknowledge Charging Party as fully fit for duty without restriction or accommodation.

6.      On or around December 16, 2019, FTCSC informed Charging Party his physicians' fitness for duty recommendations would be accepted and Charging Party would be reinstated to a position at another school and in a different grade level. In exchange, Charging Party would be required to sign a "Last Chance Agreement" dismissing all pending EEOC charges and relinquishing all future claims. Charging Party respectfully declined and FTCSC proceeded with the contract cancellation process.

7.      While on administrative leave, Charging Party attempted to find other teaching positions outside of the FTCSC and, in fact, had two separate job offers. However, the job offers were rescinded following false and/or misleading information provided by FTCSC during reference calls from those institutions.

8.      On or around January 13, 2020, a hearing regarding the cancellation of Charging Party's teaching contract was held in an executive session by the FTCSC School Board, FTCSC School Board attorney, and the FTCSC attorney. Charging Party and his attorney were also present at the hearing but were not previously informed that witnesses could be called and cross-examined.

9.      On or around January 23, 2020 a special School Board meeting was held and an official signed Order was issued regarding the recommendation to cancel Charging Party's contract. The vote reflects a 5-0 decision to reverse the contract cancellation, but reinstate Charging Party to a new assignment supervised by the district level administration at a date, time, and location to be determined.

10.      On or around February 5, 2020, an on-duty FTCSC police officer hand-delivered a letter to Charging Party at his place of residence outside the township. The letter directed Charging Party to report to a township middle school on February 10, 2020 for the position of "E-learning Facilitator."

11.      Charging Party arrived on February 10, 2020 and was informed by the school's principal that there was no "E-learning Facilitator" position at the middle school level. Instead, Charging Party would be covering a short-term FMLA leave for a seventh grade language teacher. Upon that teacher's return, Charging Party is to be utilized to cover teacher absences as needed for the remainder of the school year.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| x 8/10/20          x *Wesley G. Jordan*<br>    Date                    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

EEOC Form 5 (11/09)

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | **470-2020-03460** |

**Indiana Civil Rights Commission** and EEOC

*State or local Agency, if any*

12.     On or around February 11, 2020, Charging Party, under advisement from private counsel, emailed FTCSC Human Resource administrators of objections to the reassignment which is a demotion and breach of the Franklin Township Education Association's (FTEA) Collective Bargaining Agreement (CBA) and Charging Party's teaching contract with FTCSC.

13.     Charging Party believes that Respondent discriminated and retaliated against him because of his disability in violation of the ADA.

14.     Charging Party believes that Respondent discriminated and retaliated against him because of his gender and for opposing discriminatory practices in violation of Title VII of the Civil Rights Act of 1964.

15.     Charging Party believes that Respondent discriminated and retaliated against him for refusing to sign a release for medical information that sought information prohibited under the ADA.

16.     Charging Party believes that Respondent discriminated and retaliated against him for declining to sign a Last Chance Agreement that required immediate dismissal of pending EEOC charges and all future claims against Respondent.

17.     Charging Party believes that Respondent discriminated and retaliated against him by demoting him to an unequal position rather than reinstating him to his original position upon return from leave.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| x 8/10/20     x Wesley A. Jedson <br> *Date*     *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

**Exhibit C**

# Franklin Township Community School Corporation

Dr. Bruce A. Hibbard, Superintendent

Board of Education:
Dawn A. Downer
Kelly L. Foulk
Judy L. Shore
Zachary Smith
Larry J. Walker

**VIA HAND DELIVERY**

October 4, 2019

Mr. Wesley Tedrow
286 Melrose Lane
Greenwood, Indiana 46142

Dear Mr. Tedrow:

This is notice that effective today, Friday, October 4, 2019, you are being placed on paid administrative leave and temporarily relieved from all duties and responsibilities as an employee and in your role as a Teacher for the Franklin Township Community School Corporation ("School Corporation"). During this leave, your salary and existing insurance continue without interruption.

During this paid leave you are required to undergo a fitness for duty examination, per Franklin Township Community School Board Policy D350 FITNESS OF DUTY EXAMINATION. The examination has been scheduled for Monday, October 7, 2019 at 10:30am. The examination will last two to three hours and will be conducted by:

DLH Counseling and Consulting, LLC
7002 Graham Road, Suite 202
Indianapolis, IN 46220
Phone # 317-643-9901

Darren L. Higginbotham, Psy.D., HSPP
Licensed Psychologist/Health Service Provider in Psychology
Indiana License# 20042135A

This paid leave is an interim measure and not permanent.   It is paid leave authorized by Indiana law and will be submitted to the Board of Education for approval at the October 28, 2019 meeting.

During your paid administrative leave, you are asked to not report to work or contact any School Corporation, employees, personnel, or staff except through me.  While you are on paid administrative leave and until this matter is resolved, you are hereby further directed to refrain from being on school property or attending school functions.

If you need to come to the school or district for any reason, you are directed to make arrangements with me in advance.  You may also arrange with me to have access to personal property remaining in your office.  Failure to comply with this directive may result in a charge of insubordination, violations of School Corporation policies, and other legal remedies allowed under Indiana law.

To insure that we are able to communicate with you, if you will not be at your home address and phone listed in School Corporation personnel records, you are directed to provide me with a corrected address, email, and phone number where you may be reached during business hours. You are further directed to notify me immediately of any temporary or permanent change in your address or telephone.

Based upon the information available to me at this time, we reserve the right to begin the process of terminating the employment relationship and/or canceling your contract pursuant to Indiana law. You will receive separate notice if we choose to initiate this process.  If you have questions concerning the transition of your duties during your administrative leave, please contact me at (317) 862-2411 or email at jill.britt@ftcsc.org.   I will endeavor to return calls and emails within one (1) business day.

Sincerely,

Jill Britt
Director of Human Resources

C:      personnel file
        Bruce Hibbard, Superintendent

**Exhibit D**

# Franklin Township Community School Corporation

Dr. Bruce A. Hibbard, Superintendent

**Board of Education:**
Dawn A. Downer
Kelly L. Foulk
Judy L. Shore
Zachary Smith
Larry J. Walker

**VIA EMAIL AND US MAIL DELIVERY**

October 25, 2019

Mr. Wesley Tedrow
286 Melrose Lane
Greenwood, Indiana 46142

Dear Mr. Tedrow:

As you are aware, you were notified on October 4, 2019 that you are required to undergo a fitness for duty examination and were placed on a leave of absence under Franklin Township Community School Board Policy D350 Fitness for Duty Examination and Unrequested Leave of Absence. This policy requires that you cooperate with the examination provider in order to complete the examination.

The examination provider has brought to our attention that you revoked the release(s) for the examination provider to communicate with your healthcare provider(s) before the examination provider was able to compile information necessary for completion of the examination. Board Policy D350 requires employees to cooperate with the fitness for duty examination. In order to complete the fitness for duty examination, it is necessary that you re-instate the release(s) previously executed allowing the fitness for duty examiner to communicate with your healthcare provider(s) to compile information necessary for the completion of the examination.

Understanding that re-instating the release(s) may require time to communicate with health care providers, you are directed to execute all releases for communication between the examination provider and your healthcare provider(s), and to assure that the examination provider has all the completed release documents, no later than November 8, 2019.

We appreciate your prompt cooperation with this request, and with the overall process of determining what may be needed to facilitate your successful return to work. Please be aware that if you do not cooperate with this directive in a timely manner, FTCSC will be rendered unable to facilitate your return to work, and therefore you will be deemed resigned from employment effective November 8, 2019.

If you have questions concerning this letter, please contact me at (317) 862-2411 or email at jill.britt@ftcsc.org.   I will endeavor to return calls and emails within one (1) business day.

Sincerely,

Jill Britt
Director of Human Resources

C:      personnel file
        Bruce Hibbard, Superintendent

**Exhibit E**

# Franklin Township Community School Corporation

Dr. Bruce A. Hibbard, Superintendent

**Board of Education:**
Dawn A. Downer
Kelly L. Foulk
Judy L. Shore
Zachary Smith
Larry J. Walker

**VIA EMAIL AND VIA US MAIL**

November 15, 2019

Mr. Wesley Tedrow
286 Melrose Lane
Greenwood, Indiana 46142

Dear Mr. Tedrow:

You have requested information in follow up to my October 24, 2019 letter concerning the fitness-for-duty examination requested under Franklin Township Community School Board Policy D350 Fitness for Duty Examination and Unrequested Leave of Absence. You have asked for the reasons for the examination and for the need for you to provide release(s) for the examination provider to communicate with your healthcare provider(s).

The Franklin Township Community School Corporation (FTCSC) requested a fitness-for-duty examination after a long series of your behaviors that gave rise to safety concerns for school staff. Such behaviors have included, but are not limited to, unprofessional communication, described by staff as "yelling," to colleagues without provocation and for no apparent reason; regularly failing to speak with instructional assistants in a respectful manner, leading to a situation in which no instructional assistants are willing to work with you; and engaging in repeated, overly-personal communications with colleagues that created reasonable discomfort for the colleague.

Ordinarily, the type of inappropriate behavior you have displayed would result in discipline. However, FTCSC administration believes that this behavior may have arisen from a medical condition and the school is hopeful that with leave time and treatment, you could again successfully perform the essential functions of your teaching position.

It is with this desire to facilitate your potential to work that the medical examiner asked for a release(s) to communicate with your healthcare provider(s). The examiner wants to have as much information as possible in order to avoid giving any recommendations that would be detrimental based on your medical background, diagnoses, and prognosis. Please understand

the examiner will *not* share any of the information obtained from your providers except for the limited purpose of explaining his results and recommendations as to your employment.

As I shared in my October 24, 2019 letter, FTCSC Board policy requires that you cooperate with the school and examination provider in order to complete the examination. As was requested in that previous letter to you, you are again directed to execute all releases for communication between the examination provider and your healthcare provider(s), and to assure that the examination provider has all the completed release documents. **If you fail to follow this directive by November 22, 2019, it will be considered insubordination and you will be subject to discipline up to and including cancellation of your employment contract.**

We appreciate your prompt cooperation with this request, and with the overall process of determining what may be needed to facilitate your successful return to work.

If you have questions concerning this letter, please contact me at (317) 862-2411 or email at jill.britt@ftcsc.org.   I will endeavor to return calls and emails within one (1) business day.


Sincerely,

Jill Britt
Director of Human Resources


C:      personnel file
        Bruce Hibbard, Superintendent

# Franklin Township Community School Corporation

Dr. Bruce A. Hibbard, Superintendent

Board of Education:
Dawn A. Downer
Kelly L. Foulk
Judy L. Shore
Zachary Smith
Larry J. Walker

**VIA EMAIL AND US MAIL**

December 4, 2019

Wesley Tedrow
286 Melrose Lane
Greenwood, IN  46142

RE:       Preliminary Decision Notification

Dear Mr. Tedrow:

This letter is to inform you of my preliminary decision that your contract be cancelled for the reason(s) of insubordination and other good or just cause –lack of fitness to perform the essential functions of your teaching position with the Franklin Township Community School Corporation (FTCSC).

On October 4, you were notified that you would be required to undergo a fitness for duty examination under Franklin Township Community School Board Policy D350 Fitness for Duty Examination and Unrequested Leave of Absence, which require that employees cooperate with the examination provider in order to complete the examination.   As part of the examination, the examiner (an independent health care provider) requested that you submit release(s) for the examination provider to communicate with your healthcare provider(s) to allow the examination provider to compile information necessary for completion of the examination.   On October 25, 2019, after it came to FTCSC's attention that you had not complied with the examiner's request, FTCSC communicated to you by letter on the need for compliance with the examiner's request and the applicable policies.  In response to this letter, you requested clarification as to why the fitness for duty examination and health care provider communication release were needed.  On November 15, 2019, FTCSC sent you a letter in which your pattern of observed concerning behaviors was detailed, and in which the following was shared:

> Ordinarily, the type of inappropriate behavior you have displayed would result in discipline.  However, FTCSC administration believes that this behavior may have arisen

from a medical condition and the school is hopeful that with leave time and treatment, you could again successfully perform the essential functions of your teaching position. It is with this desire to facilitate your potential to work that the medical examiner asked for a release(s) to communicate with your healthcare provider(s). The examiner wants to have as much information as possible in order to avoid giving any recommendations that would be detrimental based on your medical background, diagnoses, and prognosis. Please understand the examiner will *not* share any of the information obtained from your providers except for the limited purpose of explaining his results and recommendations as to your employment.

In the November 15, 2019 letter, you were given additional time to provide the examiner with the necessary releases and were notified that failure to do so would be considered insubordination and would subject you to discipline up to and including cancellation of your employment contract. On November 20, 2019 you requested an extension until November 27, 2019. FTCSC granted you this extension. However, as of today, December 3, 2019, you have failed to follow the directive originally issued on October 4, 2019, and have not communicated with either FTCSC or the examiner on this matter. Therefore, you have committed insubordination.

In addition, the examiner has issued a report that he cannot conclude you are fit for duty based on the multiple limitations in information available to him. Therefore, it is not appropriate for you to return to your position.

Either your insubordination or your lack of fitness for duty would alone be cause for cancellation of your contract. The combination of these severe issues make continuing your contract and employment a detraction from our mission and would impair the confidence of this community in our management of its staff and students. Cancellation of your contract is necessary in order to maintain the integrity and efficiency of the School Corporation.

Not later than five (5) days after receipt of the notice, you may request a private conference with the Superintendent or designee regarding this recommendation. If you request this conference, it will be set not later than ten (10) days after the request. Not later than five (5) days after the conference with the Superintendent or designee, you may file a request for a conference with the School Board. At these conferences, you are entitled to be accompanied by a representative. The procedure set out above is found in IC 20-28-7.5, a copy of which will be provided to you upon request.

If you do not request a conference with the Superintendent within the time specified in this notice, my preliminary decision becomes final, subject to the approval of the school board, and your contract will be cancelled immediately.

Your current leave will continue until further notice.

If you have questions, you may contact Jill Britt, Director of Human Resources at 317-862-2411.

Sincerely,

Melissa Morris
Principal, Arlington Elementary School

Enclosure

**Exhibit G**

December 10, 2019

To Whom It May Concern:

It has come to my attention that my patient dating back to August 9, 2001, Wesley Tedrow, was required to attend a Fitness For Duty examination by his employer to determine whether or not he is able to successfully perform the essential functions of his job as an elementary teacher.

As his primary care physician, I attest that Mr. Tedrow is fully capable of performing all of the essential functions of his job without restriction or accommodation.  Mr. Tedrow has self-disclosed to his employer and the examiner both an anxiety disorder and an endocrinological disorder requiring pharmacological treatment.  Prior to acquiring specialized care for these conditions, my treatment has included pharmacological management of both.  At no time in my history of providing medical care and treatment for Mr. Tedrow for these or any other minor ailments have I had objective reason to question his medical fitness in relation to the performance of his essential duties as a professional educator.

It is both surprising and concerning that my input was not solicited in the evaluation of a long-standing patient's fitness for duty.  While I would have considered limited releases of information to verify the information contained in my statement above, an unrestricted release of information would be inappropriate for the specific purpose of a Fitness For Duty examination.

Sincerely,

Donald McMahon, M.D.

**Exhibit H**



12/12/2019

To Whom It May Concern;

Mr. Tedrow is my patient who I have been seeing since 7/25/2018.  During my time with Mr. Tedrow, he has always been open and compliant with treatment, and has always reported to appointments promptly and timely.  Mr. Tedrow's relationship with this clinic has always been for the purposes of both therapy and medication management, and has always been under the pretense of better control of personal stressors.  Mr. Tedrow has always behaved in a manner that is nothing but respectful and appropriate.  I have never treated him for anything outside of what I would consider normal stressors of a functioning adult.  He has never expressed any behavior or verbalized anything that would make me concerned for his ability to function well in his current career path.  Where I have not been involved in an official "fitness for duty" evaluation with Mr. Tedrow, as this is outside the purview of a voluntary treatment-based relationship, I cannot see any reason why he would not be fit to successfully complete and succeed in his current profession.

Sincerely,

Morgan McCormick, MD

563 W Westfield Blvd  |  Indianapolis, IN 46208  |  Tel 317.449.5631  |  Fax 317.449.5635

**Exhibit J**

To Whom It May Concern:

I received notification on December 4 that the process of terminating my contract had been initiated by Franklin Township. The reasons for the termination are a mischaracterization of events and a violation of Franklin Township's own policies. I flatly deny all charges that are being used as a possible rationale for my contract's cancelation. Further, I believe that the circumstances leading up to this whole thing are the result of discriminatory and retaliatory practices on the part of my administrators.

Let me begin with the charge that I "lack fitness to perform the essential functions of my teaching position." In direct contradiction, I am totally fit to perform the essential functions of my teaching position. My medical providers with a combined 25 years experience with me agree that I am fit for duty. Also, the medical examiner's findings were "inconclusive," NOT unfit. I will address that momentarily. However, I have documentation from my providers that I am, in fact, fit for duty. According to the school board policy D350, documentation from my own health care providers should be considered. It was not.

The other reason that Franklin Township is listing for termination of my contract is that I am "insubordinate." The reason I am being considered insubordinate is that I have not complied with an egregious overreach on the part of the corporation's medical examiner. That is a gross mischaracterization of events. I am not insubordinate. Let me explain the ways I cooperated and complied with the medical examiner. I attended the three hour meeting. He said he needed my diagnoses, prognoses, and prescriptions, which I authorized my providers to release. I also signed a release that the report be communicated to the school district. I went home and felt it had gone well. After all, I am completely fit for duty. But then the medical examiner came back a few days later and said he wanted access to all of my medical records to complete the report. All of them.

That is where we hit a problem. My providers balked at the request and advised me not to provide the release. The EEOC's published guidance on medical exams for current employees says that this was an overreach. We reached an impasse. Franklin Township did not offer me my rights outlined in the school board policy; that policy provides clear guidance on how to resolve a dispute. Rather than following the policy, Franklin Township issued a directive and threatened termination.

Simply because I will not release all of my medical information to a school-selected examiner, it does not mean I am unfit for duty or insubordinate. In fact, nothing in the school board policies mentions or requires such a release. I have a great deal of reasonable mistrust for all parties involved because of a long series of events in which I have been treated differently in the school because of a self-disclosed anxiety disorder and my gender. It is my belief that if I share the information, personal and irrelevant medical history may be shared freely with the school district personnel. While I chose not to release all of my medical records to the examiner, it is both unfounded and a deviation of your own policies to consider me insubordinate or unfit for not doing so.

As an aside, I believe it's a dangerous practice for a school to suggest that if a teacher doesn't provide all their medical records to a school's examiner that they are insubordinate. I think most school employees would be very concerned to know that the school is attempting to exercise this demand.

Furthermore, I would like to submit that there have been additional violations of Franklin Township's own policies along this process.

First, according to the D350 policy about Fitness for Duty and Unrequested Leave of Absence, the first step is a meeting with the employee to discuss concerns. This meeting did not occur. On October 4, I was pulled out of my classroom with no warning, ambushed with a letter that said I could be terminated if I did not comply, told

not to argue, and sent home from school. There was no opportunity to discuss anything. According to your policy, I should have been given the opportunity to submit professional opinions of my chosen providers. I was not given that opportunity but have collected those on my own. In your policy, and in the letter you sent on November 15, there was a suggestion that if I were unfit for duty, I could receive leave time up to one year for treatment. That was never provided or discussed; the township moved straight to termination. That's interesting because it suggests that the school is acting in a way that proves I am, in fact, fit for duty. If I were unfit and in need of treatment, leave time should be provided. However, because I am fit and don't need treatment; now I'm being disciplined. However, the only provision for discipline in regards to a fitness for duty exam is if an employee refuses to submit to said exam. I did submit to the exam.

Additionally, when we are talking about discipline, there is a procedure outlined in board policy D375. That procedure was not followed. I have no disciplinary record. So that means the school skipped steps 1, 2, and 3 and acted on step 4 of their own policy. Exceptions allow for skipping steps, but none of the exceptions apply at all to my situation. Did I show up under the influence of drugs or alcohol? No. Did I possess alcohol or drugs at a school event? No. Did I commit insubordination while carrying out the duties of my job? No. Did I commit a crime? No. Was I arrested? No. Did I falsify my application? No. Did I threaten to physically harm another person or property? No. Did I use poor judgment that could risk physical harm to someone? No. Did I harass anyone? No.  So anyway, these steps were skipped, which also means that none of the provisions for disciplinary guidelines were applied.

Additionally, in a letter dated October 25, the school district threatened that if I did not comply with the request to release ALL of my medical records, they would "deem me resigned." The attorney from ISTA alerted the school district that this was not permissible. The school district did not follow through; however, it seemed to be an attempt to subvert my due process rights.

After the school district and I reached the impasse, I decided to seek other employment. I wanted to move on and allow my students to have a permanent teacher. I received two verbal job offers from schools, but they were rescinded after, according to one of the schools, Franklin Township refused to provide information. I have been blacklisted and prevented from moving on and allowing some resolution for my students, my family, and myself.

Of course this all begs the question: why has this happened? What has caused the school district to go to unethical and possibly illegal lengths to get rid of me? And that is an interesting question. It is my belief that starting in 2017, I was treated differently because I disclosed I had an anxiety disorder. In fact, I have evidence to support this claim. I also believe that I was treated differently because I am a man. When I was in a situation where a female coworker threw something at me, screamed multiple curse words at me, and came around her desk toward me as I was backing out of her door, I was told--by you, Dr. Pettet, in this circumstance, and multiple times by others--that I am a man of muscular stature with a deep voice and therefore, inherently intimidating and that I will be treated differently as such. I would like to point out that having this meeting with you instead of Dr. Hibbard creates a conflict of interest. And finally, I also believe that Melissa Morris has behaved differently and unfairly toward me out of retaliation. I have been in situations with her in which she demonstrated questionable ethical judgment. With regards to those situations, I reached out to ask for help to protect both myself and my students. Calling attention to her questionable decisions has caused her to retaliate, and I have evidence to support this from witnesses.

For these reasons, the EEOC has filed three specific charges that they are in the process of investigating. I have also retained private counsel.

In closing, here are the facts of my situation.

I am fit for all of my essential functions as an elementary school teacher.
I am most certainly not insubordinate, neither by the school board's definition of the term nor by common sense.
I am a highly effective educator.
I am an employee with no disciplinary record.
I am a father, a husband, a provider for my family, a man of faith and philosophy who works to do the right thing.

It is my hope that Franklin Township will cease this unjustified termination process and display a willingness to seek a more peaceful resolution to the situation.

Thank you for listening.

- Ask to sign contract
- Ask for a copy of the medical report //
- Provide a copy of the EEOC charges

**Exhibit K**

# Franklin Township Community School Corporation

Dr. Bruce A. Hibbard, Superintendent

**Board of Education:**
Dawn A. Downer
Kelly L. Foulk
Judy L. Shore
Zach Smith
Larry J. Walker

December 18, 2019

To the Board of School Trustees:

On December 4th, Principal of Arlington Elementary School, delivered to Mr. Wesley Tedrow a written preliminary decision to cancel the teacher's contract, effective immediately upon the final decision of the school board.  On December 6th, Mr. Wesley Tedrow requested a conference with the superintendent or assistant superintendent to discuss the principal's preliminary decision.

On December 13th, Mr. Wesley Tedrow and I met.  After careful consideration of the teacher's statements, I recommend to you that the teaching contract of Mr. Wesley Tedrow be cancelled, effective immediately upon the final decision of the school board.

Before the Board makes a final decision on this matter, Mr. Wesley Tedrow has the right to request a conference with the Board no later than five (5) days after our December 13th meeting. I have received the request.  I will inform you of the date, time, and place of the conference.

Sincerely,

Dr. Kent Pettet
Chief People Officer

cc:  Mr. Wesley Tedrow

**Exhibit L**

## DECLARATION OF JONATHAN A. BONT

1.      My name is Jonathan A. Bont. I am a competent adult over 18 years of age, and I make the following declaration in lieu of affidavit under 28 U.S.C. § 1746 based on the following statements and on my personal knowledge.

2.      I am a licensed attorney in good standing in the State of Indiana.  I was retained by Mr. Wesley Tedrow in 2020 for the limited purpose of representing him in his efforts to negotiate a severance with Franklin Township Community School Corporation (the "School").  As part of that representation, I attended a board hearing on or about January 13, 2020, regarding the principal's proposed termination of Mr. Tedrow's contract.   However, I did not question any witnesses or present any documents as part of that hearing.  My role was to merely observe and advise Mr. Tedrow as it pertained to his goal of negotiating a severance.  I do not recall attending any pre-hearing conference call in anticipation of the January 13, 2020, board hearing.  I have reviewed my timekeeper entries from January 3, 2020, and they do not indicate that I attended such a pre-hearing conference call.

     **I DECLARE UNDER PENALTY FOR PERJURY THAT THE FOREGOING STATEMENTS ARE TRUE AND CORRECT.**

Dated:  <u>02/10/2021</u>          _____
                                              Jonathan A. Bont

**Before the School Board of the Franklin Township Community School Corporation**

**In the Matter of the Cancellation of the Teacher's Contract of Wesley A. Tedrow**

The School Board ("Board") of the Franklin Township Community School Corporation (the "Corporation" or "District") convened on January 13, 2020 for a Board Conference to consider the preliminary determination of the Administration to cancel the contract of teacher Wesley Tedrow. An audio record of the Conference was made. The Administration was represented by attorney John McDavid and Administration representative Dr. Kent Pettet. Mr. Tedrow personally appeared, as did his attorney Jonathan Bont. The parties presented multiple witnesses and documents for the Board's consideration. Having considered all evidence submitted, the Board now makes the following Findings of Fact, Conclusions of Law, and Order:

**Findings of Fact**

1. Mr. Wesley Tedrow ("Tedrow") was hired by the Corporation as a certified teacher to teach at elementary schools beginning with the 2012-2013 school year.

2. Tedrow has been employed since that time as a certified teacher by the corporation.

3. Tedrow has received effective or highly effective reviews since he has been employed by the Corporation.

4. In 2019, Tedrow was teaching at Arlington Elementary school, and his principal was Mrs. Melissa Morris ("Morris").

5. Morris testified that beginning in the spring of 2019, she noticed a change in Tedrow's behavior. Generally, while he had been earlier more of a quiet and subdued person, he

had incidents in the spring when he was more direct, confrontational and outspoken, while getting aggressive with his language and body.

6. Tedrow had issues with his spring observation occurring during ILEARN, but did not complain about the results of his observation and was the only one to raise such issues.

7. On May 1st, 2019, at the Post Observation Meeting including Tedrow, his Union Representative Ms. Gossard, and Morris, Tedrow asked off-topic questions that were inconsistent with a typical post-observation meeting.  She asked to meet another day and he refused to meet with her.

8. Tedrow also refused to meet with Morris about his statement in an e-mail that May that he felt "heightened frustration coming his way at times when he asks for help."

9. On May 10, a meeting had been scheduled with Chief People Officer, Dr. Kent Pettet, Tedrow, Ms. Cathy Smith, FTCSC Union President, and Gossard to discuss the observation that took place during the student testing window.  In addition to discussing the observation during testing issue, the meeting concerned these recent incidents and Tedrow's behavior.

10. During the May 10, 2019 meeting, Dr. Pettet observed Tedrow's voice rise, he leaned in and presented what Dr. Pettet testified as being an agressive posture and tone.

11. Dr. Pettet advised Tedrow at the May 10, 2019 meeting that Tedrow was doing exactly what they had been talking to him about.  Neither Union official expressed disagreement with that assessment.

12. After all of the spring 2019 incidents, Morris signed off on Tedrow's "Effective" evaluation rating for the 2018-2019 school year.[1]

---

[1] As it was undisputed and in evidence that these dates were 2019 and 2018-2019, dates have been corrected as a typographical error from the 2020 and 2019-2020 dates listed in the original Findings document.

13. On September 18, 2019, Morris received an e-mail from Tedrow about Instructional
    Assistant ("IA") communication issues and requested a meeting, which Morris then
    scheduled.  The IA was new and the meeting was intended to make sure she knew policy
    on advising when she would not be in the room.  On September 19, Morris spoke to the
    IA from Tedrow's room about it, and the IA reported she felt intimidated and that
    Tedrow yelled at her regarding the situation in front of students.

14. On September 25, 2019 Morris met with Tedrow and Union Representative Goddard.
    Morris advised Tedrow how the IA's felt about not being comfortable in his room.

15. Tedrow was not disciplined for any of these incidents, nor for the accumulation of them,
    and they were not otherwise addressed nor were these incidents documented.

16. Administration, as described in testimony by Human Resources Director Jill Britt
    ("Britt") and Chief People Officer Dr. Kent Pettet ("Pettet"), did not discipline for any of
    this behavior because Morris and others recognized the behavior was out of character for
    Tedrow, who had taught there for years.

17. The Administration referred Tedrow for a Fitness For Duty ("FFD") examination.  The
    referral to the examiner, Dr. Higginbotham, requested that should Tedrow be found unfit,
    the Corporation was "also requesting recommendations in the report intended to restore
    the employee to a level of fitness necessary to perform" his job.

18. Britt testified that the Corporation has had several successes in the past with FFD exams
    and returning a teacher successfully to the classroom.

19. On October 4, 2019, Britt met with Tedrow in the presence of Union representatives, and
    delivered a letter to him placing him on paid administrative leave and referring him for an
    FFD examination pursuant to Board policy D350.  This letter also advised that based on

the information available to Britt, she was reserving the right to begin the process of terminating the employment relationship and/or cancelling his contract pursuant to Indiana law.

20. Britt had scheduled Tedrow's exam for Monday, October 7, 2019, which would reasonably allow time for Tedrow to return to work at the conclusion of two week fall break on Monday October 21, 2019.  However, Tedrow was unavailable on October 7, so the examination was pushed back at his request to October 14.

21. Tedrow attended the exam on October 14.

22. Tedrow either refused to sign or signed and later rescinded medical release authorizations Dr. Higginbotham requested to complete his examination pursuant to the referral.

23. As described in the fitness for duty report, Dr. Higginbotham made several efforts to obtain follow-up information from Tedrow's treating doctors.   In a document submitted by Tedrow, in a letter dated October 17, 2019, Dr. Higginbotham raises several concerns and questions to Dr. McCormick that according to Dr. Higginbotham's report, remained unanswered.

24. As evidenced by the October 17, 2019 letter, Dr. Higginbotham informed Dr. McCormick and had previously informed Tedrow that he would only report information to Tedrow's employer that was relevant to the question he was tasked to answer.

25. Tedrow did not attend a follow-up exam with Dr. Higginbotham scheduled to address questions and concerns on information from the other doctors.

26. Dr. Higginbotham's report stated that he received some records from the providers, but that those raised additional concerns and questions about Tedrow's well-being and treatment, and included a 2017 report from one of Tedrow's treatment providers stating

Tedrow engaged in use of a substance that the treatment provider advised against due to being "dangerous" (Dr. Higgenbottom's report page 7, quoting 2017 treatment provider report).

27. Dr. Higginbotham concluded: "Therefore, the finding of his psychological fitness for duty can only be determined to be inconclusive, in my opinion, based on the multiple limitations noted in the information available to this evaluator."

28. On October 25, 2019, after being advised by Dr. Higginbotham of the status of the release of information, Britt sent a letter via mail and e-mail to Tedrow advising of Board Policy D350 and the requirement to cooperate with a FFD exam.  The letter stated in part: "In order to complete the fitness for duty examination, it is necessary that you reinstate the release(s) previously executed allowing the fitness for duty examiner to communicate with your health care provider(s) to compile information necessary  for the completion of the examination."  The letter also advised that he needed to comply no later than November 8, 2019, and if he didn't cooperate in a timely manner the Corporation would be unable to facilitate his return to work.

29. At Tedrow's request the deadline was extended to November 15, 2019.

30. Tedrow contacted Britt and requested reasons for the examination and for the need to provide releases. In response, Britt sent Tedrow a letter November 15, 2019, via e-mail and US mail stating that normally Mr. Tedrow's inappropriate behaviors toward staff would have resulted in discipline, but administration believed it might have arisen from a medical condition and was hopeful that with leave time and treatment he could return to perform the essential functions of his teaching position.

31. The November 15 letter also explained that the evaluating doctor wanted sufficient information "in order to avoid giving any recommendations that would be detrimental based on your medical background, diagnosis, and prognosis." It went on to explain that "...the examiner will *not* share any of the information obtained from your providers except for the limited purpose of explaining his results and recommendations as to your employment." (emphasis in original).

32. The November 15 letter also advised that a failure to follow the directive to provide medical releases by November 22, 2019 so that the FFD examination could be completed "will be considered insubordination and you will be subject to discipline up to and including cancellation of your employment contract".

33. After receiving an extension of the November 22, 2019 deadline, Tedrow did not respond further, which he indicated in testimony was a result of his and his health care providers' concerns for his privacy.

34. On December 4, 2019, Morris sent via e-mail and US Mail the letter notifying Tedrow of her preliminary decision that his contract be cancelled for "insubordination, and other good or just cause-lack of fitness to perform the essential functions of your teaching position".

35. The letter notified Tedrow of his right to request a private conference with the Superintendent or Assistant Superintendent if done within five (5) days after receipt of the notice, to be set no later than ten (10) days after such a request.   It also notified him that not later than five (5) days after the request with the Superintendent or Assistant Superintendent, he had the right to request a conference with the school board. It further

informed him that he had a right to be accompanied by representation at these conferences. All of this was advised pursuant to Indiana Code 20-28-7.5.

36. Tedrow timely requested a conference with the Superintendent or Assistant Superintendent. Dr. Pettet, who serves as Assistant Superintendent and is licensed as such, met with Tedrow and his Union Representative, Chad Hunter, ISTA UNISERV Director, pursuant to his request for a conference with the Superintendent or Assistant Superintendent.

37. Tedrow read a statement at the conference but did not otherwise ask questions.

38. Dr. Pettet's December 18, 2019 Recommendation to the Corporation School Board states that "After careful consideration of the teacher's statements, I recommend to you that the teaching contract of Mr. Wesley Tedrow be cancelled, effective immediately upon the final decision of the school board."

39. Statements from Tedrow's health care providers (October 16, 2019 and December 12, 2019 from Morgan McCormick, M.D.; December 10, 2019 from Donald McMahon, M.D.) indicate that Tedrow is not a danger to himself or others (McCormick October 16) and that Tedrow is fit for duty (McMahon and McCormick December 12).

40. Tedrow exercised his right to request a board conference, which was held Monday, January 13, 2019.

### Conclusions of Law, and Order of the Board

1. The incidents that gave rise to the fitness for duty and contract cancellation recommendation demonstrate disruption to the school environment by both Tedrow and Morris.

2.      Tedrow's disruptive conduct is cause for the Administration to take action, but does not rise to the level of contract cancellation, particularly considering Tedrow's relatively long and discipline-free employment history.

3.      Testimony from Tedrow and Administration witnesses indicate Tedrow and Morris do not, or no longer, fit well together in an employment relationship; further, testimony from the Administration indicates Tedrow and Arlington Elementary are no longer a good pairing.

4.      Multiple written, recent statements from Tedrow's health care providers fulfill the Administration's reasonable requirement that sufficient evidence of fitness for duty be submitted prior to Tedrow returning to work.

5.      In accordance with Conclusions 1-3 and the impeding districtwide grade/school building Realignment, it is not appropriate for Tedrow to return to Arlington Elementary or to a position supervised by Morris in the foreseeable future; and it is not appropriate for Tedrow to immediately return to work in a classroom setting.

6.      It is appropriate, in accordance with the preponderance of the evidence presented at the January 13, 2020 Conference, and hereby ordered by the School Board of the Franklin Township Community School Corporation, that:

      a.      Tedrow be returned to work on Monday, February 17, 2020.

      b.      The remainder of the 2019-2020 school year, Tedrow will be supervised at the district level and assigned temporary duties for which he is qualified, which may include a teaching assignment in a building other than Arlington, with a principal other than Morris, and to a grade level/area for which he is qualified.

c.   If not already in place by the start of the 2020-2021 school year, Tedrow will be transferred and assigned at that time to a permanent teaching position in a building other than Arlington, with a principal other than Morris, and to a grade level/area for which he is qualified.

7.   In accordance with Conclusion 4 and District Policy D375 Staff Discipline, *should* Tedrow's future conduct violate any District policy, procedure, rule, or administrative directive, such conduct will subject Tedrow to promptly-issued, appropriate discipline in the same manner as discipline would be applied to any other similarly-situated employee.

*The foregoing Findings, Conclusions, and Order was adopted by the passing of a motion duly made and seconded at the January 23, 2020 School Board Meeting.*

VOTING FOR THE MOTION:                    VOTING AGAINST THE MOTION:

**Exhibit N**

# Franklin Township Community School Corporation

Dr. Bruce A. Hibbard, Superintendent

**Board of Education:**
Dawn A. Downer
Kelly L. Foulk
Judy L. Shore
Zachary Smith
Larry J. Walker

February 5, 2020

Wesley Tedrow
286 Melrose Lane
Greenwood, IN 46142

RE:      Return to Work

Mr. Tedrow,

This letter is notification of your return to work with Franklin Township Community School Corporation. Your return to work will be Monday, February 10, 2020. If for some reason you have a conflict on this date, please call me immediately to discuss. Otherwise we will plan to see you on February 10, 2020.

Currently there are no regular contract teaching positions available in the district for the remainder of the 2019-2020 school year. Due to this you will be placed at Franklin Township Middle School East as an ELearning Facilitator. This is a regular contract and your current contract as a teacher will continue in this position for the remainder of the 19-20 school year. This assignment is in line with the school board order dated January 23, 2020. For your information attached is the teacher work day schedule that includes the middle school level work day. You will need to report Monday morning, February 10, 2020 at 6:55am and meet with Mr. Vandermark, Principal and he will give you a new ID badge and discuss the assignment.

For the 2020-2021 school year, per board order dated January 23, 2020, your placement will be Kitley Intermediate School and you will be team teaching math in a fourth grade classroom.

Please let me know if you have any questions. We look forward to your return.

Jill Britt
Director of Human Resources

**Exhibit O**

# Franklin Township Community School Corporation



# Certified Staff Handbook

# Revised 9.03.2020

*FTCSC practices equal opportunity in education and employment.  No employee shall, on the basis of religion, race, color, national origin, sex, disability, age, or any other basis prohibited by law, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any program or activity, or in any employment conditions or practices, conducted by FTCSC.*

# TABLE OF CONTENTS

**MISSION STATEMENT, CORE VALUES, VISION – page - 3**

**ORGANIZATION – page 4**

**WELCOME, PURPOSE – page 5**

**ASSOCIATION – page 6**

**DAY & HOURS – page 7**

**EXTENDING A BREAK, GENERAL LEAVE DAYS – page 8**

**PERSONNEL FILE – page 9**

**PROFESSIONAL DEVELOPMENT – page 10**

**TEACHER VACANCIES, VOLUNTARY/INVOLUNTARY ASSIGNMENTS – pages 11-12**

**REDUCTION IN FORCE – page 13**

**ABSENCES & CLASS COVERAGE – page 14**

**INCLEMENT WEATHER – page 15**

**SUMMER SCHOOL AND IREAD – page 16**


**APPENDIX A – TEACHER WORKDAY - page 17**

**APPENDIX B – HARASSMENT GUIDELINES INCLUDING SEXUAL HARASSMENT - page 18**

**APPENDIX C – EMPLOYEE DRUG AND ALCOHOL GUIDELINES - page 22**

**APPENDIX D – INTERNET, TELECOMMUNICATIONS AND E-MAIL USE GUIDELINES - page 27**

**APPENDIX E – SOCIAL MEDIA GUIDELINES - page 30**

**APPENDIX F – CHILD ABUSE LAW AND REPORTING GUIDELINES -page 32**

**APPENDIX G – BULLYING - page 33**

**APPENDIX H – CLASS COVERAGE - page 36**

**APPENDIX I – PROFESSIONAL LEAVE EXPENSE GUIDELINES - page 37**

9.03.2020

# Franklin Township Community School Corporation

## MISSION STATEMENT

Our mission is to instill in all students passion for lifelong learning and to inspire each one to contribute as a responsible citizen to the future of our interconnected world.

## CORE VALUES

We believe that…

- all people have inherent worth and bring unique gifts and talents to our community

- all people with a passion for learning who accept responsibility for their choices improve the quality of life

- our community's strengths lie in the foundation provided by families and our willingness to embrace diversity

- consistently engaging in honest communication creates an informed and trusting community that is nurturing and respectful

- our children's opportunities rely upon their skills to compete in an interconnected, interdependent world

- challenging ourselves commits us to change and fosters continuous growth

## VISION

We are a community of caring individuals who value learning and take responsibility for our global future.

9.03.2020

3

# Organization of the
# Franklin Township Community School Corporation

## SCHOOL BOARD OF TRUSTEES

The School Board of Trustees' mission is to provide a positive, orderly and harmonious environment in which respect for the dignity and worth of every member of the school community is recognized and promoted. The Board believes all employees, parents/guardians and students are entitled to be treated, and obligated to treat others, with courtesy, fairness and decency. Only with the commitment and ongoing attention of each of us to achieve their maximum potential as students, as citizens and productive members of society.

## SUPERINTENDENT OF SCHOOLS

The Superintendent of Schools is employed by the Board and serves as the executive officer of the school corporation. As the executive officer, the Superintendent is responsible for the professional and managerial leadership necessary to apply Board policies and directives to the operation of the school corporation.

## ADMINISTRATORS

Although the Superintendent is responsible for all aspects of school operation, some duties and responsibilities are delegated to other administrators, directors and supervisors.

9.03.2020

# WELCOME TO

# FRANKLIN TOWNSHIP COMMUNITY SCHOOL CORPORATION

Whether you are a new employee or have been employed with FTCSC for some time, we are pleased to welcome you. We are extremely proud of our school district and hope that you will share this pride as we continue to work and grow in a pleasant and mutually beneficial relationship that puts our students first.

Your best performance in your job will make an important contribution to our continued success. Our dedicated employees are vital to our reputation for excellence. Our goal is to furnish our students with a top-notch education and instill in them a passion for lifelong learning, and to be an employer of choice for our employees.

Please familiarize yourself with the handbook so that you will know what FTCSC expects from you and what you can expect from FTCSC. This handbook can be found on the district website and will be communicated to you through the online training system. The FTCSC School Board Policies are the official policies of the district. This handbook serves as a guideline. Please refer to FTCSC School Board Policies for full descriptions. https://ftcsc.org/policies/

Please do not hesitate to bring your questions to your principal or to the Human Resources Department. Again, we are pleased to have you with us. We hope you find your work interesting, challenging, and rewarding. Best wishes to you as a FTCSC employee.

They are Teacher Employment Guidelines issued by the Superintendent of Schools. They may be subject to change and the Superintendent of School or his/her designee will review them for change after meeting the obligation of mandatory discussion with the FTEA.

Nothing in the Teacher Employment Guidelines will constitute a **waiver** or acquiescence or in any way abrogate the discussion rights of the Association.

This handbook contains guidelines that correlate with the official School Board policies. This version supersedes and revokes all previous practices, procedures, guidelines, and other statements of FTCSC whether written or oral, that modify, supplement, or conflict with this handbook. The entire listing of School Board policies is listed on the Franklin Township Community School Corporation website at https://ftcsc.org/policies/.

9.03.2020

## ASSOCIATION

1. The Association agrees to keep its membership open to all teachers in the corporation regardless of race, creed, sex, color physical handicaps, sexual orientation or national origin.

2. The Association shall have the right to use school buildings at all reasonable hours for local meetings.  Use of the buildings shall be scheduled with the building principal or designee one (1) week in advance when possible.

3. The Association shall be provided with space on a bulletin board in each building for their exclusive use in the faculty lounge or in another area frequented by teachers.

4. The Association shall have the right to use the inter-school mail system and email system.

5. The Association President or another Association officer designated by the President, shall have the right to visit schools to conduct Association business.  Upon arrival of the President or designee at any school, he/she shall notify the principal or the office staff of his/her presence.

6. The Association shall be given a place on the agenda of the orientation program for new teachers and on the agenda of the first general meeting of teachers at the start of the school year.

7. The Superintendent shall make available, upon written request by the President of the Association or designee, any statistical information, which the Association may deem relevant to negotiations.  The Superintendent further agrees to supply, upon request, all other public records or records of public proceedings as may be deemed necessary to the legitimate function of the Association.

8. Rights granted to the Association shall not be granted to any other teacher organization.

9. The Collective Bargaining Agreement, upon ratification, shall be available in an electronic format through the Corporation website. The School Board Policies shall also be accessible in an electronic format.

10. The President of the Association shall be permitted to be involved in Association business during non-student contact time during the course of the workday.

9.03.2020

## DAY & HOURS

A.   TEACHING YEAR

The teacher's regular work year shall consist of one hundred eighty-five (185) days.

B.   TEACHER DAY

1.   The teacher workday for full time teachers shall not exceed eight (8) hours (plus a 30-minute duty-free lunch) – See Appendix A.

2.   Thirty (30) continuous minutes' duty free time between the hours of 10:00 A.M. and 2:00 P.M. will be granted for lunch.  During a teacher's lunchtime, a teacher may sign out of the building.

3.   The beginning and ending of the school day at each school will be determined by the Superintendent of Schools.  Beginning and ending times may be changed from year to year after meeting the obligation of mandatory discussion with the FTEA.

4.   Preparation time can be scheduled anytime within the teaching day so long as there is one block of preparation time during the school day of at least forty (40) minutes whenever possible.  This time is provided to each teacher and is specifically designated for curriculum and teaching-related planning and preparation.   Teachers will respect the integrity of the preparation time by remaining in the building unless leaving is required for specific curriculum-related purposes approved by the principal.  Principals will not require teachers to utilize the preparation time to do tasks at will.

5.   Teachers who travel between buildings will be given sufficient time to travel in addition to their preparation periods.  One of the building administrators will be designated as the primary supervisor.  The primary supervisor shall inform each traveling teacher at the start of the school year or at the start of his/her assignment which administrators have the responsibility for evaluation, attendance at meetings and responsibility for parent conferences.  Meetings for traveling teachers must occur during the teacher day.

6.   When a teacher on a regular or temporary contract is absent for an approved leave (see Article VI of the CBA), an attempt will be made to hire a substitute teacher if the absence is at least one half day.

## EXTENDING A BREAK

The contract reads:

*The intent of general leave is not to use those days to extend a break. Only one (1) general leave day may be used immediately preceding or following a scheduled break with two (2) days of general leave deducted from the accumulation of general leave. General leave cannot be taken if there is an insufficient number of days from which to deduct the leave.*

For the 2020-2021 school year breaks below are the defined days that count as 2 days:

October 2, 2020
October 19, 2020
December 22, 2020
January 4, 2021
March 19, 2021
April 5, 2021
May 28, 2021

## GENERAL LEAVE DAYS

The contract reads:

*No more than three (3) general leave days may be taken consecutively. If more than three (3) consecutive days are required due to extenuating circumstances, approval by the Superintendent or designee must be requested.*

If you are making a request of an extenuating circumstance, you must put your request in writing to the Human Resource Department one (1) month prior (if possible) to the date you are requesting to take the leave. Your written request must include the following information:

- Name
- Building
- Date requested
- Why you believe this to be an extenuating circumstance

9.03.2020

**PERSONNEL FILE**

1.  A teacher shall have the right, during regular business hours or at a time mutually agreed upon by the Superintendent or designee, to review the contents of his/her personnel records except for confidential statements protected by law.  This review must be in the presence of the Superintendent or designee.  A copy of those records may be made available with a twenty-four (24) hour notice.

2.  No material shall be placed in a teacher's personnel file without the teacher being informed of such placement.

9.03.2020

**PROFESSIONAL DEVELOPMENT**

A.   Required Professional Development

1.   Required professional development will be designated by the superintendent or designee.

2.   When school is in session required professional development will be compensated at a rate of $25.00 per hour for time extending beyond contract hours. Appendix A

3.   When school is not in session, required professional development will be compensated at a rate of $25.00 for each hour of the professional development.

4.   The corporation will attempt to provide a substitute for required professional development, which occurs during the contract day.

5.   Expenses for required professional development involving travel will be paid per the corporation travel guidelines.  No additional compensation will be offered for non-conference time outside of the contract day.  See Appendix I

B.   Optional Professional Development

1.   Optional district-offered professional development outside the contract day/year may or may not have a stipend attached to attendance dependent on the source of financial funding.  The stipend, if available, will be compensated at a rate of $25.00 for each hour of the professional development.

2.   No punitive action will be taken against a teacher who does not attend optional district-offered professional development outside of the contract day or year.

9.03.2020

## TEACHER VACANCIES

The Human Resources Department shall send via email, all present vacancy or newly created teaching positions to all certified staff.

1. Teachers may request an assignment to an available position by using our Frontline Application system to the Human Resources.  The applicant must complete an internal application by the designated date on the internal posting.

2. Internal candidates will be screened first by certification (license) and then by evaluation rating (Highly Effective or Effective).  Internal candidates with an evaluation rating lower than effective or on a plan will not be considered.

3. External candidates must complete the online application process and will be screened first by certification and then by evaluation rating if such a rating is obtainable.

4. Both types of candidates must present a lesson which is observed by designated administrative personnel, and may include a hiring committee.  External candidates must create a model lesson to present to the hiring committee.  Internal candidates may be asked to create a model lesson or be  observed in the classroom by the hiring committee.

5. Internal candidates not selected will receive communication from the hiring principal indicating the reason they were not selected.  External candidates will be notified by Human Resources.

6. When positions open within one week of the first teacher day, the position will not be posted internally.

## INVOLUNTARY TEACHER ASSIGNMENT

1. Involuntary transfers may be made for good cause:

   When a change in the student population of a building results in an administrative decision to increase/reduce the number of teachers in that building, length of service in the Corporation will be one of the factors considered in selecting those to be involuntarily transferred. Teachers in the affected building will be given an opportunity to volunteer to be transferred before the final decision regarding transfers is made.

2. For any routine involuntary transfer, teachers willing to transfer will be sought.  In the event there are no teachers willing to transfer, the following process will be implemented:

   a. The person with the least seniority within a grade level or department will be designated as the person that will change their teaching assignment.

   b. Additionally, when a teacher is subject to an involuntary transfer due to a reduction in teaching positions, and there is more than one vacant position in the teacher's licensure area(s), the displaced teacher shall be allowed to choose their assignment.  If in these circumstances there is more than one teacher subject to an involuntary transfer in the

9.03.2020

same licensure area, the most senior teacher shall choose their preferred assignment with subsequent selections being made in seniority order.

3. The Administration and the Association recognize that there may be times when it is beneficial to reassign a teacher to another grade level or subject area.  When the administration determines that this reassignment is necessary for valid educational reasons, they will meet with the affected teacher(s) and discuss the reassignment and provide a full disclosure of all specific educational reasons for the decision.  The teacher(s) shall be notified in advance that such a reassignment is pending and shall have the right to representation.  The Association President shall be provided notice of all reassignments and the rationale for the reassignments.

4. When an involuntary transfer is necessary due to enrollment factors within the two weeks prior to the opening of the school year or within the two weeks after the opening of the school year, the vacant position will not be posted and only volunteers from within the affected grade level, subject area, or building will be sought.  Should no one volunteer, the teacher involuntarily transferred shall be the teacher with the least seniority with the appropriate licensure in the affected area.

5. Placements for involuntarily transferred teachers shall be made prior to the posting of vacancies.  When a teacher is subject to an involuntary transfer and there is more than one vacant position in the teacher's licensure areas, the displaced teacher shall be allowed to choose the assignment.  If in these circumstances there is more than one teacher subject to an involuntary transfer in the same licensure areas, the most senior teacher shall choose their preferred assignment with subsequent selections being made in seniority order.

9.03.2020

## REDUCTION IN FORCE

A.  If it becomes necessary for the Superintendent or designee to terminate the employment of teachers in the bargaining unit due to economic necessity or declining enrollment, the Superintendent or designee shall notify the teachers involved as early as possible.

B.  In the event a reduction in force is necessary, the Superintendent or designee will first seek volunteers in the appropriate areas.

C.  In the event of a reduction in force, or recall after reduction in force, the following criteria as listed below shall be the sole determinants:

    a.  Certification

    b.  Evaluation

        i.  Highly Effective, Effective, Needs Improvement, Ineffective

    c.  Seniority

        i.  Seniority is defined as the teacher's length of continuous service from the date of last employment in the Corporation serving under a regular teacher's contract. Approved leaves of absence shall not count as a break in continuous service.  A seniority list shall be developed for each position RIF'ed and made available to the Teacher Association at least thirty (30) days prior to the School Board action.

    d.  Birth date

D.  Any teacher who has been RIF'ed may become a sub in the district at the daily rate of $100.00

E.  A RIF'ed teacher shall remain on the recall list so long as a desire to do so is expressed to the Human Resources Department at least once per year, in writing, between April 1st and May 1st of subsequent years.  It shall be the teacher's responsibility to keep the Human Resources Department informed of any change of address while on the recall list.  Failure to respond to an offer of employment within fifteen (15) days of receipt of the offer shall be considered a refusal of an employment offer.  Any refusal of an employment offer by the teacher shall result in the teacher's name being removed from the recall list with no further obligation on the part of the School Corporation.

F.  Teachers with a rating of Needs Improvement or Ineffective according to the Teacher Evaluation System will not be placed on a recall list.

## REPORTING ABSENCES

<u>Attendance</u>

Employees are expected to report for work on time, on a regular basis.

Employees who are going to be late or absent for any reason, are expected to enter the absence in the Absence Management System as soon as an employee is aware. It is the employee's responsibility to insure that proper notification is given.  Notification must occur before the absence is taken. If the time of the absence needs to be adjusted, it must occur within 24 hours of the absence. Asking another employee, friend or relative to give this notification is not considered proper, except under emergency conditions.

Unauthorized leave, such as abuse of leave time or workdays missed without pay, is defined as non-performance of duties and responsibilities as assigned by the Superintendent, and may result in the initiation of contract cancellation, or such disciplinary action as may be recommended by an administrator.

## CLASS COVERAGE

**Teachers Serving as Substitutes** - In the event a teacher volunteers to substitutes for another teacher, the volunteering teacher will be responsible for submitting a claim using the Absence Management System by the end of the pay period following the date of the services rendered. The claim must be approved by the Principal or his/her designee in order to receive payment. The teacher will receive $25.00 per class coverage. For teachers at FCHS covering a Thursday or Friday block schedule, the pay will be $50.00 per block. See Appendix H

9.03.2020

14

## INCLEMENT WEATHER

A.  Teacher safety is critical when planning school cancellation or delay.

    a.  Snow or ice – teachers should follow the same guidelines as students. If school is cancelled or delayed because of hazardous driving for students, teachers will also be delayed or released from school obligations.

    b.  Extreme cold or fog – if school is delayed for extreme cold or fog, teachers are to report to their assigned responsibilities as normal. If school is closed due to extreme cold, teachers will follow the closing guidelines issued for students.

B.  Emergency road closings or driving conditions – if the county (where the teacher lives) issues a warning that there should be no driving and the school district is open, the teacher may use a general leave day to offset the absence. This emergency warning should be described in the notes of the absence.

9.03.2020

## SUMMER SCHOOL AND IREAD VACANCIES

A.  Summer school and IREAD vacancy notices shall be sent via email as soon as enrollment numbers have been confirmed.

B.  Interested teachers must complete the required application process.

C.  In the filling of summer school and IREAD vacancies, when other factors are equal, positions will be offered to teachers within the school corporation.

   a.  Positions shall be filled based upon:

      i.  Current assignment and

      ii.  Current evaluation and

      iii.  Certification and

      iv.  Seniority

   b.  Available positions will be divided among all applicants who qualify under the criteria above. If available positions still exist, teachers will be asked if they would be willing to teach additional classes.

D.  Any request for summer camp programs should be submitted to the Superintendent or designee for prior approval.

E.  Reimbursement for self-sustaining summer camp programs initiated by the teacher shall be determined on an individual basis by agreement between the Teacher and the Superintendent or designee.

9.03.2020

**APPENDIX A**

| Teacher Workday 2020-2021 | | | | | | | |
|---|---|---|---|---|---|---|---|
| **High School** | | | | | | | |
| **Student Day = 7:30-2:15** | | | | | | | |
| **Day** | **Start Time** | **End Time** | | | | | |
| Monday | 7:10 AM | 3:10 PM | | PD | 2:25-3:10 | **Substitute Work Day** | 7:15-2:30 |
| Tuesday | 7:10 AM | 3:10 PM | | | | **Teacher Half Day** | 11:10 |
| Wednesday | 7:10 AM | 3:10 PM | | Collaboration | 2:25-3:10 | | |
| Thursday | 7:10 AM | 3:10 PM | | | | | |
| Friday | 7:10 AM | 3:10 PM | | **CCR Time** | 12:41-2:15 | | |
| **Junior High/Intermediate** | | | | | | | |
| **Student Day = 8:20-3:05** | | | | | | | |
| **Day** | **Start Time** | **End Time** | | | | | |
| Monday | 7:15 AM | 3:15 PM | | PD | 7:15-8:00 | **Substitute Work Day** | 7:45-3:15 |
| Tuesday | 7:15 AM | 3:15 PM | | | | **Teacher Half Day** | 11:15 |
| Wednesday | 7:15 AM | 3:15 PM | | Collaboration | 7:15-8:00 | | |
| Thursday | 7:15 AM | 3:15 PM | | | | | |
| Friday | 7:15 AM | 3:15 PM | | | | | |
| **Elementary** | | | | | | | |
| **Student Day = 9:10-3:55** | | | | | | | |
| **Day** | **Start Time** | **End Time** | | | | | |
| Monday | 8:05 AM | 4:05 PM | | | | **Substitute Work Day** | 8:30-4:00 |
| Tuesday | 8:05 AM | 4:05 PM | | PD | 8:05-8:40 | **Teacher Half Day** | 12:00 |
| Wednesday | 8:05 AM | 4:05 PM | | Collaboration | 8:05-8:40 | | |
| Thursday | 8:05 AM | 4:05 PM | | | | | |
| Friday | 8:05 AM | 4:05 PM | | | | | |

#WeAreFlashes

## Notes:

1. FCHS/FCJH/Intermediate Schools will have a staff meeting/PD Day on Monday and Collaboration Day on Wednesday.

2. Elementary Schools will have a staff meeting/PD Day on Tuesday and Collaboration Day on Wednesday.

3. If the district or building has not scheduled PD time on the designated days, teachers are still to report at the designated time and will engage in activities such as planning, grade level collaboration, or student staffing meetings.

4. Certified staff can sign out for their lunch. (Which is 30 minutes between the hours of 10:00 – 2:00 – following State Code.)

9.03.2020

**APPENDIX B**

**HARASSMENT GUIDELINES INCLUDING SEXUAL HARASSMENT**

Franklin Township Community School Corporation (FTCSC) is committed to maintaining a work environment free from unlawful discrimination, including sexual harassment. In furtherance of that commitment, FTCSC forbids any prohibited discriminatory conduct toward any of its employees.  The use of the term "employee" also includes non-paid/volunteers who work subject to the control of school authorities.

Neither sexual harassment nor any other harassment based on race, religion, color, national origin, gender, age, disability, or any other protected category specified by applicable law will be tolerated.

An individual who initially welcomed such conduct by active participation must give specific notice to the alleged harasser that such conduct is no longer welcome in order for any such subsequent conduct to be considered sexual harassment.

Any employee found to have engaged in sexual harassment shall be subject to discipline, including, but not limited to, warning, suspension, expulsion, or discharge from employment subject to applicable legal due process rights.

FTCSC also forbids retaliation against any person who has opposed any prohibited discriminatory practice or who has participated in good faith in any manner in an investigation or other proceeding about a prohibited discriminatory practice.

**PROHIBITED CONDUCT**

<u>Sexual Harassment</u>

Sexual harassment includes:

Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when:

- Submission to that conduct is made a term or condition of employment,

- Submission to, or rejection of, that conduct is used as a basis for employment decisions affecting the employee, or

- That conduct has the effect of unreasonably interfering with an individual's work performance or of creating a hostile or offensive work environment.

Other unwelcome conduct directed at an employee or an applicant for employment because of his or her gender may also be deemed to be sexual harassment. Examples of conduct that may be sexual harassment include:

9.03.2020

18

- Verbal conduct of a sexual nature such as talking about sex or sexual feelings, telling sexual jokes or stories, asking personal questions about dating or sexual life, making sexual comments or innuendoes, whistling or making other suggestive sounds, repeatedly asking for dates or other personal attentions;

- Nonverbal conduct of a sexual nature such as displaying materials with sexually suggestive words or pictures, making sexual gestures, giving gifts or other items of a sexual or personal nature, staring at a person's body or clothing, looking a person up and down, blocking a person's path, hindering a person's movement, invading a person's space by standing closer than appropriate under the circumstances.

- Physical conduct of a sexual nature such as touching, kissing, hugging, massaging, brushing up against another person, having sex or attempting to have sexual relations with another person.

Remember unwelcome sexual conduct may not always be apparent.  "Putting up with" or submission to sexual conduct does not necessarily mean the conduct is welcomed.

Remember that, although the intent of the person engaging in the conduct may be harmless or even friendly, because the conduct is unwelcome by the recipient of the conduct, not the intent of the person engaging in the conduct that is relevant to whether the conduct is harassment.

For these reasons, FTCSC urges all its employees to refrain from engaging in any conduct of sexual nature in the work setting or with other employees.

Harassment Based On Other Protected Categories

Discriminatory conduct based on an employee's or applicant's race, religion, color, national origin, gender, age, or disability is also prohibited. As with sexual harassment, harassment based on any of these categories may include verbal, nonverbal or physical conduct.

Because the conduct is unwelcome to the recipient of the conduct, not the intent of the person engaging in the conduct that is relevant to whether or not the conduct is harassment.  Again, it may not always be clear that the conduct is unwelcome -- acquiescence does not necessarily mean it is welcome.

Retaliation

Retaliation against any employee, or any applicant for employment, who has opposed any prohibited discriminatory practice or who has participated in good faith in any manner in an investigation or other proceeding about a prohibited discriminatory practice is also prohibited.

Employment decisions about an employee, or any applicant for employment, who has filed a charge of discrimination should not be based on the fact that the person has filed a charge.  Employment decisions should be based only on legitimate business considerations such as performance.  Discriminatory verbal or physical conduct should not be directed at any employee, or any applicant for employment, because of any protected activity.

9.03.2020

**STANDARD OF BEHAVIOR AT FTCSC**

FTCSC expects its employees and all those who deal with its employees to treat others with courtesy and respect appropriate in an educational setting.

If you are not sure if your conduct might be harassment prohibited by FTCSC you should ask yourself the following questions:

- Would I engage in that conduct if my spouse, child, or parent were present?

- Would I engage in that conduct if my peers were present?

- Would I engage in that conduct if an audio or video recording were being made of me?

- What would my reaction be if someone else acted this way toward my spouse, daughter, son, mother, father, sister or brother?

- Would I want my conduct to be described in detail in a memorandum or in the local press?

If your answer is "no" to any of these questions, then the conduct is questionable and may be harassment.

In particular, with respect to sexual harassment, a friendly, humorous, or benign intent in engaging in sexual conduct will not keep the conduct from being categorized as sexual harassment.  If the conduct is sexual in nature and is unwanted and unwelcome by others, it may be deemed to be sexual harassment.

While not all unwanted sexual conduct rises to the level of <u>illegal</u> sexual harassment, the FTCSC guideline seeks to prevent all unwanted conduct of a sexual nature.  Similarly, while one racial epithet may not constitute illegal racial harassment, the FTCSC guideline against harassment based on other protected categories seeks to prevent <u>all</u> discriminatory conduct based on race, religion, color, national origin, gender, age, and disability.

<u>Reporting Requirements</u>

If you believe that you have been subjected to harassment, unlawful discrimination, or any other similar unlawful conduct, you must report that violation immediately to your immediate supervisor, school principal, or the Director of Human Resources at 317-803-5007.  Managers and supervisors who receive reports of violations are required to inform the Director of Human Resources immediately.

Any employee who becomes aware of any conduct that he or she believes may be harassment or retaliation has a similar obligation to report that conduct regardless of whether he or she is personally involved in the conduct and regardless of whether the conduct involves other employees or clients, customers, vendors, or others in the work environment.

<u>Investigation Procedures and Penalties for Harassment</u>

Whenever FTCSC receives a report of conduct that may constitute harassment or retaliation, it will promptly conduct an investigation to gather available facts and to determine whether or not prohibited conduct has occurred.  FTCSC will take prompt and appropriate action to stop any harassment that it finds

9.03.2020

has occurred and will take reasonable steps to prevent any further harassment.  The Superintendent's Harassment Grievance Procedure outlines the necessary steps to follow.

Any employee found to be in violation will be subject to appropriate disciplinary action or other corrective action up to and including discharge.

Conclusion

Harassment and retaliation have no place in the FTCSC work environment.  Harassment, false accusations of harassment, and retaliation can have serious effects on careers and personal lives of innocent people. For these reasons FTCSC urges all employees to act responsibly to establish a working environment that is free of harassment, retaliation, and any other form of discrimination.

**HARASSMENT AND CIVIL RIGHTS GRIEVANCE PROCEDURES**

If a school employee believes he/she is a victim of harassment and for complaints that apply to acts or omissions relating to protected rights based upon age, race, color, religion, sex, disability, and national origin, including limited English proficiency, the employee must come forward by submitting a complaint to their immediate supervisor or to the Human Resources Department.

The Process:

The process for investigating a complaint of harassment, discrimination, retaliation, or other similar unlawful conduct is outlined in Board Policy A100 (Anti-Harassment), which is available online at https://ftcsc.org/knowledge-base/a100/.

9.03.2020

## APPENDIX C

## EMPLOYEE DRUG AND ALCOHOL

It is the obligation of Franklin Township Community School Corporation to protect the safety, health and wellbeing of its students and employees.  Drugs and alcohol represent the largest social problem in the country, and in recent years, it has become increasingly obvious that they have entered the workplace, costing billions of dollars annually in accidents, productivity, absenteeism, and health and medical costs.

As part of FTCSC's obligation to ensure a safe work environment for all employees, the following guidelines on substance abuse have been established.  Given the risks that arise if employees are attempting to perform their duties while using or having used illegal or non-prescribed drugs or alcohol, the following is applicable to all.  This restricts certain items and substances from being brought on or being present on FTCSC school corporation location, prohibits employees and others working on FTCSC school corporation location from reporting for work or working with illegal or controlled substances, alcohol, and other substances in their systems.

"School Corporation Location" is defined as any FTCSC. building on any FTCSC property; on any FTCSC owned vehicle or in any other FTCSC approved vehicle used to transport students to and from schools or school activities; off FTCSC property at any school-sponsored or school-approved activity, event, or function such as a field trip, athletic event or performing arts activity, where students are under the jurisdiction of the School Corporation or otherwise engaged in School Corporation business.

Off-the-job illegal drug use that adversely affects an employee's job performance; leads to absenteeism, tardiness, or poor work jeopardizes the safety of other employees or the public; or risks damage to FTCSC equipment is the proper cause for discharge.

An employee who is arrested for off-the job drug activity may be in violation of this.  In deciding what action to take, FTCSC will consider the nature of the charges, the employee's present job assignment, the employee's record with FTCSC and other factors relative to the impact of the employee's arrest upon FTCSC.  An employee convicted of a criminal drug offense in the workplace must notify FTCSC within five days of conviction.

Prohibited Activities

The use, purchase, transfer, possession, sale, distribution, offer to buy or sell, trafficking in, presence in the body of or transportation of the following on FTCSC property, or while performing FTCSC business is a dischargeable offense:

- Alcoholic beverages

- Illegal or controlled substances, including non-prescribed drugs (meaning non-prescribed narcotics, hallucinogenic drugs, marijuana, or other non-prescribed controlled substances)

- Equipment related to illegal or controlled substance use

9.03.2020

22

No employee shall report for or remain on duty while having a blood alcohol concentration of 0.04 or greater.

Prescription Medication

Legally administered drugs in an employee's system will not constitute a basis for discharge; however, the legally administered drug must not exceed the prescribed amount, and if so, will constitute a violation. When a legal drug may affect the safety of the employee, the employee's job performance, or the safe or efficient operation of an FTCSC facility, the employee must present a doctor's statement that the drug(s) can be used safely in the performance of the employee's job.  However, FTCSC reserves the right to make a final determination of an employee's fitness for duty based upon the advice of a FTCSC physician.

Refusal to Submit

The refusal of an employee to provide a testing sample for the illegal use of drugs or for alcohol impairment will result in the employee being immediately suspended from work without pay, and will be subject to further disciplinary action up to and including discharge.

A refusal to test or cooperate with either the drug or alcohol testing process will be treated the same as a positive result.  The following is considered Refusal to Submit: 1) Employee fails to provide adequate breath for testing without a valid medical explanation after he/she has received notice of the requirement for breath; 2) Employee fails to provide adequate urine for a controlled substance test without a valid medical explanation after he/she has received notice of the requirement for urine; 3) Employee furnishes a sample that is adulterated, diluted, switched, or false; or 4) engages in conduct that clearly obstructs the testing process.

Note: The drug and alcohol collection/testing facility has the right to declare a Refusal to Submit if there is any indication of resistance to the collection/testing procedure.  Resistance includes both verbal and non-verbal indications.

Consequences of Prohibited Conduct

Upon receipt of a "positive" drug or alcohol test of an employee, FTCSC may immediately discharge the employee.

Employees who are discharged for refusing to test or testing positive, or other terms of the drug and alcohol policy may be disqualified from receiving unemployment compensation benefits.

Employees will be granted access to a written copy of their test results upon request.  To obtain a copy of the test results, an employee must submit to the FTCSC Human Resources Department a written request. A copy will be provided within five business days.

9.03.2020

**TESTING PROCEDURES**

<u>Scheduling of Tests</u>

Any reasonable suspicion for the illegal use of drugs or alcohol impairment testing required by FTCSC of its employees normally will occur during, or immediately before or after, the employees' regular work period. All testing is considered work time and the employee will be compensated as such.  Such compensation will be made in the pay period in which the testing was done.

The actual costs for drug and alcohol impairment testing required by FTCSC of its employees will be paid by FTCSC.  FTCSC will provide or will pay reasonable transportation costs to its employees for travel to and from the testing facility.

**TESTING PROGRAMS**

<u>Pre-Employment Testing (Bus Drivers Only)</u>

Those persons that FTCSC intends to hire as bus drivers must be tested for drug use prior to employment. All offers of employment are conditional upon a drug-free result, compliant with US Department of Transportation regulations.

<u>Random Testing (Bus Drivers Only)</u>

Random testing ensures that every bus driver employee of FTCSC has an equal chance of being tested. Unannounced tests are not publicized.  Employees covered under the provisions of the US Department of Transportation (DOT) regulations will be tested according to the US DOT regulations.

<u>Reasonable Suspicion Testing</u>

Reasonable suspicion means that FTCSC reasonably suspects that an employee may be affected by the use of alcohol and/or illegal drugs and that the use may adversely affect job performance or the work environment.  The actions or observations of the employee must occur while the employee is on-duty or just preceding the work period.  A supervisor and/or FTCSC official must observe the conduct, appearance, and/or actions of the employee.

In the case of suspected drug use, the employee must be taken immediately by FTCSC police officer or supervisor to a collection site and a urine sample must be obtained.  The employee's action that causes FTCSC supervisor or official to require the test must be documented and signed by the witness within 24 hours after the behavior is noticed.

In the case of suspected alcohol use, the test must be done as soon as possible.  The supervisor who makes the determination that reasonable suspicion exists shall not conduct the breath alcohol test on the employee.

9.03.2020

24

Right to Demand Re-testing and Challenge the Results

Any test subject who tests positive on a confirmatory test on any drug test required by FTCSC may:

- Request in writing a confirmation re-test of the original sample, at his/her own expense, provided that FTCSC must receive the request within five working days after the test subject has been informed of the confirmed positive test result; and

- Submit additional information to FTCSC in a confidential setting, to try to explain the confirmed positive test results.  FTCSC must receive the explanation within five working days after the test subject has been informed of the confirmed positive test result.

Confirmatory re-tests requested and paid for by the test subject may be conducted only by laboratories that are properly approved to conduct drug testing by the Substance Abuse and Mental Health Services Administration (SAMHSA) or the College of American Pathologists.

Confidentiality of Results

FTCSC will not disclose test results except as authorized, permitted, or required by applicable law.

Searches

FTCSC may, without prior notice and where reasonable cause exists, search the person (a non-touching search), any FTCSC school corporation location, or any employee's personal property (including but not limited to vehicles, handbags, briefcases, jackets, etc.) that has been brought onto the school corporation location of FTCSC.  FTCSC property covered includes property of any nature owned, controlled or used by FTCSC including but not limited to parking lots, offices, desks, file cabinets, lockers and vehicles.  Any employee who refuses to cooperate with such search will be suspended immediately, without pay, and will not be allowed to return to the workplace where the search was to take place.  The employee may also be subject to discipline, up to and including discharge.


## SMOKE/TOBACCO FREE ENVIRONMENT

The Board is dedicated to providing a healthy, comfortable, and productive environment for students, staff, and citizens.  Moreover, the Board recognizes and supports the positive impact and the importance of adult role modeling for students during their school years in a smoke/tobacco free environment.

The Board prohibits the use of all tobacco products within all Corporation owned or leased buildings, in all Corporation owned or leased vehicles, and on all Corporation owned or leased grounds.  This is in force twenty-four (24) hours a day for all events.

9.03.2020

Right to Demand Re-testing and Challenge the Results

Any test subject who initially tests positive may:

- Request in writing a confirmation re-test of the original sample, at his/her own expense, provided that FTCSC receives the request within five (5) working days after the test subject has been informed of the confirmed positive test result;

- Submit additional information to FTCSC in a confidential setting, to try to explain the confirmed positive test results.  FTCSC must receive the explanation within five (5) working days after the test subject has been informed of the confirmed positive test result.

Confirmatory re-tests requested and paid for by the test subject may be conducted only by laboratories that are properly approved to conduct drug testing by the Substance Abuse and Mental Health Services Administration (SAMHSA) or the College of American Pathologists.

Confidentiality of Results

FTCSC will not disclose test results except as authorized, permitted or required by applicable law.

9.03.2020

**APPENDIX D**

**INTERNET, TELECOMMUNICATIONS AND E-MAIL USE**

The Board believes that use of the Internet must be in support of educational programs and must be consistent with the objectives of the Franklin Township Community School Corporation.  Users are responsible for their behavior and communication over the network.  Access is given as a privilege, not a right, for the purpose of supporting and enriching educational programs.

Users are prohibited from using the school network for the following actions:

- Sending or displaying offensive messages or pictures

- Harassing, insulting, or attacking others

- Using obscene language or other inappropriate forms of communication

- Use which damages computers or related equipment

- Using the network for activities that violate copyright laws

- Using accounts or passwords of other persons

- Trespassing in another person's work or files on the network or other media

- Falsifying the user's identity

- Intentional waste of resources

- Using the network for non-educational purposes

- Disrupting use of the network by other persons

- Accessing/downloading any files for which a fee is charged

- Violating any local, state, or federal statute

Security on any computer system is a high priority.  An individual's account shall not be used without written permission from that individual. Attempts to log onto the system as any other user will result in cancellation of user privileges.  Any person identified as being a security risk or as having a history of unacceptable use of other computer systems may be denied access to the Internet in the Franklin Township Schools.

Failure to abide by these rules shall result in exclusion from Internet usage.  The building principal or principal's designee shall determine if exclusion is temporary or permanent.

9.03.2020

## EMAIL AND INTERNET ACCESS

All staff members are to be allocated email addresses and district login information at the time of hire.

Email will be utilized by the District as a primary communication delivery system and employees are responsible for information sent via this communication method.  Email may be utilized to communicate payroll information, benefits information, etc.

Email or internet will also be utilized to facilitate District level training through Safe Schools.

- For example, Universal Precautions or Handbook distribution.

- These trainings will be assigned by the Human Resources Department and are to be completed through individual accounts only.

- Department Supervisors are responsible for coordinating these types of training and assuring all staff completes via their assigned account.

Email may also be utilized by Department Supervisors to communicate with staff members.

Staff are expected to check email one time per week and are responsible for the information sent.

Department Supervisors will work with building department leadership to establish resources that allow all staff 15 minutes to check email one time per week.

- This is to be during a staff members scheduled time and is compensated as such

- It is not to occur on scheduled breaks

- It is not to be an extension of the current schedule

- If staff members do not need the full allotted time or the assigned task, they are to return to work

- Staff are to only use those resources approved by their direct Supervisor

- Staff are not to access any other computers other than those assigned

- Each staff member is to receive a written Plan of Action on accessing resources and processes

- Each building level Supervisor is responsible for ensuring all staff members are provided the opportunity each week for these activities.

- If additional resources are necessary, a written resource is to be provided to the CFO

Department Supervisors may also assign additional training.  Time invested in mandatory trainings is to be compensated.  Staff are not to work any additional overtime without prior planned approval.

9.03.2020

Staff may also check email on their personal time.  This will not be compensated as it is not an expectation.

Training for login, email, and Safe Schools will be organized by Department Supervisors and provided by the District IT department.  This training will be optional, thus not compensated.

Department Supervisors are to work with Department Leaders to provide assigned training on computer usage and any assigned Safe Schools trainings for new hires.

Human Resources is the contact for accounts, as this is part of the new hire process: email, login, and Safe Schools.  Do not contact IT directly unless there is an issue with the actual programs, then contact helpdesk through the helpdesk email system.

Please note:  Security on any computer is a high priority, any violation will not be tolerated and may be subject to disciplinary action up to and including termination. This may include but is not limited to:

- Accessing unauthorized computers

- Utilizing anyone else's login information

- Violation of any guideline provided in District policy

- Any other inappropriate usage, as determined by FTCSC Administration

Departmental Supervisors will need to create a communication system for subs for applicable information.

9.03.2020

## APPENDIX E

## SOCIAL MEDIA

Staff members shall only engage in electronic communication with students via e-mail, texting, social media and/or online networking media, such as Facebook, Twitter, YouTube, Myspace, Skype, blogs, etc., when such communication is directly related to curricular matters or co-curricular/extracurricular events or activities with prior approval of the superintendent or designee. Staff shall only text students in a group chat with a team or class. Staff may text an individual student if the parent/guardian is also included on the text message. Staff shall only text a student using an application approved and monitored by the school.

Staff members are prohibited from electronically transmitting any personally identifiable image of a student(s), including video, photographs, streaming video, etc. via email, text message, or through the use of social media and/or online networking media, such as Facebook, Twitter, YouTube, Myspace, Skype, blogs, etc., unless such transmission has been made as part of a pre-approved curricular matter or co-curricular/extracurricular event or activity such as a school-sponsored publication or production.

Staff members are personally responsible for all comments/information they publish online. Be mindful that what is published will be public for a long time—protect your privacy.

Before posting personal photographs, thought should be given as to whether the images reflect on your professionalism.

If FTCSC believes that an employee's activity on a social networking site, blog, cell phone, or personal website may violate FTCSC policies, a request may be made to cease the activity.

Depending on the severity of the incident, the employee may be subject to disciplinary action.

Personal Social Media Site Guidelines

An employee's personal social media site should not be used as a means of communicating with current or former FTCSC students under the age of 18 unless the student is a family member.


Personal social media sites are not to be used as a means to engage students in the curriculum.

If, on a personal social media site, you identify yourself as an employee of FTCSC when making comments, include a disclaimer within your profile that the views are your own and do not reflect FTCSC's positions, strategies, opinions, or policies (i.e. in Facebook a disclaimer can be added on the Notes page on your profile).


Curricular/Extra-Curricular or School Sponsored Social Media Site Guidelines

9.03.2020

30

The use of social media as a curricular/extra-curricular or school sponsored site must be approved by the employee's supervisor and shall follow the age requirements of the social media site (i.e. Facebook requires students to be at least 13 years old).

Staff members who wish to use a curriculum, co-curricular/extra-curricular or school sponsored event site should not use the same site as a personal site.

When using social media as a curricular/extra-curricular or school event site, what is inappropriate in the school environment is deemed inappropriate online and will follow the policies and guidelines of FTCSC. This includes the use of digital pictures or avatars.

Respect copyright and fair use guidelines. Do not plagiarize. When using a hyperlink, be sure that the content is appropriate and adheres to school rules, policies, and Acceptable Use Policy (AUP).

Remember your association and responsibility within the FTCSC social media environment. How you represent yourself online should be comparable to how you represent yourself in person. Comments made online should always meet the highest standards of professional discretion. Staff should act on the assumption that all postings are in the public domain.

<u>No Prohibition Against Protected Concerted Activity</u>

This policy is not intended to prevent employees from engaging in discussions regarding their wages, hours, or working conditions with any other employee or engaging in protected concerted activity. Employees will not be disciplined or retaliated against for such discussions or for otherwise engaging in protected concerted activity.

9.03.2020

**APPENDIX F**

**CHILD ABUSE LAW AND REPORTING**

**REPORT CHILD ABUSE OR SUSPECTED CHILD ABUSE IMMEDIATELY!**

A FTCSC employee who has reason to believe that a child is a victim of child abuse or neglect shall make an immediate report as required by Indiana law (IC 31-33-5-1).

FTCSC employees shall **immediately make the report to the Department of Children Services (DCS) or the local law enforcement agency. After making the report, the individual employee shall notify the person in charge of the school** or their designee that the report to DCS/law enforcement was made (IC 31-33-5-2).

**"Immediately" means immediately. Failing to report suspected abuse is a crime (IC 31-33-22) and may be subject to license cancelation.**

How to report

- Call police and/or call the Indiana Child Abuse & Neglect Hotline
  - 1-800-800-5556
- An intake specialist will:
  - Listen and ask questions using intake guidance tool
  - Captures report information
  - Send a report to the local county office to determine next steps.
- Get the case number
- Immediately notify the person in charge of the school or their designee that the report to DCS / law enforcement was made

9.03.2020

## APPENDIX G

## BULLYING

A.  Bullying is prohibited by the FTCSC. Students who commit any acts of bullying are subject to discipline including but not limited to suspension, expulsion, arrest and/or prosecution.

B.  Definition:

*"Bullying" is defined as overt, unwanted, repeated acts or gestures, including verbal or written communications or images transmitted in any manner (including digitally or electronically); physical acts committed; aggression; or any other behaviors committed by a student or group of students against another student with the intent to harass, ridicule, humiliate, intimidate, or harm the targeted student, creating for the targeted student an objectively hostile school environment that:*

   1.  places the targeted student in reasonable fear of harm to his or her person or property;

   2.  has a substantially detrimental effect on the targeted student's physical or mental health;

   3.  has the effect of substantially interfering with the targeted student's academic performance; or

   4.  has the effect of substantially interfering with the targeted student's ability to participate in or benefit from the services, activities, or privileges provided by the school.

Bullying does not include, and should not be interpreted to impose any burden or sanction on, the following:

   1.  participating in a religious event;

   2.  acting in an emergency involving the protection of a person or property from an imminent threat of serious bodily injury or substantial danger;

   3.  participating in an activity consisting of the exercise of a student's freedom of speech rights;

   4.  participating in an activity conducted by a nonprofit or governmental entity that provides recreation, education, training, or other care under the supervision of one (1) or more adults;

   5.  participating in an activity undertaken at the prior written direction of the student's parent; or

   6.  engaging in interstate or international travel from a location outside Indiana to another location outside Indiana.

C.  Applicability: The FTCSC prohibits bullying in all forms. This policy may be applied regardless of the physical location in which the bullying behavior occurred, whenever the individual committing the bullying behavior and any of the intended targets of the bullying behavior are students attending a school within the FTCSC and disciplinary action is reasonably necessary to avoid substantial interference with school discipline or prevent an unreasonable threat to the rights of others to a safe

9.03.2020

and peaceful learning environment. The FTCSC prohibits bullying through the use of data or computer software that is accessed through any computer, computer system, or computer network.

D.   Education: The FTCSC will provide training and/or instruction on anti-bullying prevention and policy to all students in grades 1 through 12, as well as staff, in accordance with Indiana law.

E.   Reporting:  Anyone who believes that a student has possibly been or is the victim of bullying is encouraged to immediately report the situation to an appropriate staff member such as a teacher, school counselor or administrator (including the Corporation Lead Administrator). All staff, volunteers and contracted service providers who observe or receive a report of suspected bullying shall notify a designated school administrator in charge of receiving reports of suspected bullying within the same day. If a staff member does not know who to make a report to, he or she should report directly to the building principal or Corporation Lead Administrator. Bullying reports to the Department of Child Services and/or law enforcement must be made as required by law, such as when a staff member believes that a student is the victim of abuse or neglect. Any person who makes a report of bullying and requests to remain anonymous will not be personally identified as the reporter or complainant to extent permitted by law. The FTCSC will act appropriately to discipline staff members, volunteers, or contracted service providers who receive a report of bullying and fail to initiate or conduct an investigation of a bullying incident and will act appropriately to discipline persons who falsely report an incident of bullying. The Corporation will act appropriately to discipline students, staff members, visitors or volunteers who make false reports of bullying.

F.   Investigation:  Once a report of suspected bullying is received by the designated school administrator, an expedited investigation shall follow. The investigation should be facilitated by the designated school administrator or other appropriate school staff. Information relating to the investigation will be gathered using means including, but not limited to: witness interviews, request for written witness statements, record identification and review, and an assessment of whether bullying occurred. The investigation will be initiated within one (1) school day of the report to the designated school administrator and will ordinarily be completed within ten (10) school days.

G.   Intervention/Responses:  If a report of suspected bullying is substantiated through an investigation, then the FTCSC shall take appropriate intervention and responses as consistent with policy and procedure. The FTCSC will take prompt and effective steps reasonably calculated to stop the bullying, remedy the bullying, and prevent the bullying from recurring. Interventions and responses include, but are not limited to: separating the bully and the target; follow-up school counseling for the target; bullying education for the bully; and prompt disciplinary action against the bully. These steps should not penalize the target of the bullying. Disciplinary actions against the bully may include, but are not limited to: suspension and expulsion for students; discharge for employees; exclusion for parents, guests, volunteers, and contractors; and removal from any office for governing body members. Also, if the acts of bullying rise to the level of serious criminal offense the matter may be referred to law enforcement. The Corporation shall inform the parents of all students involved in alleged incidents, and, as appropriate, may discuss the availability of counseling and other intervention services

H.   Parental Involvement: Parents are encouraged to be involved in the process of minimizing bullying. Parents should report suspected acts of bullying to an appropriate school official. In addition, parents of students suspected of bullying will be notified with a phone call or through other appropriate means of communication. Conversely, parents of students suspected of being the target of acts of

bullying will also be notified with a phone call or through other means of appropriate communication. Parent notifications will occur in an expedited manner within two (2) school days after the designated school administrator receives the report of suspected bullying. Parents of students who are disciplined for acts of bullying will be involved in the disciplinary process consistent with the law and the FTCSC policy.

I.   Reporting to IDOE: Each school within the Corporation will record and report to the Corporation Lead Administrator or his or her designee the frequency of bullying incidents in the following categories: verbal bullying, physical bullying, social/relational bullying, and electronic/ written communication bullying (or a combination or two or more of the above categories). The Corporation Lead Administrator or his or her designee shall report the number of bullying incidents by category for each school and the entire corporation for each school term to the Indiana Department of Education by July 1.

| Legal Citations: | IC 20-33-8-13.5 | Adopted |
| IC 5-2-10.1-12 | IC 20-34-6-1 | 11/24/08 |
| IC 20-20-8-8 | IC 21-39-2-2.1 | Revised 1/13/14 |
| IC 20-26-5-34.2 | | |
| IC 20-30-5-5.5 | | |
| IC 20-33-8-0.2 | | |

9.03.2020

35

**APPENDIX H**





## STEPS FOR TEACHER COVERING A CLASSROOM

- Sign into your AESOP/Absence Management account
1. Select the date
2. Change Substitute Required to NO
3. Select Absence Reason Classroom Cvg/25
4. Change time to Custom put in the hour (system will not let you put in 55 minutes)
5. In the Notes to Administrator you must put in the teacher and block that you covered. You will not be able to put to create the Classroom Cvg/25 without putting in the notes to administrator
6. Create Absence
- For a teacher to do this is must be done within 24 hours of the date it occurred in AESOP/Absence Management.

## FINISHED EXAMPLE



9.03.2020

36

**APPENDIX I**

**Professional Leave Expense Guidelines**

Any professional leave and/or expenses associated with professional leave must be preapproved through the professional leave application process.

All receipts and other documentation associated with professional leave:

- Must be submitted in an organized manner to the corporation business office within 10 business days of returning.

- Must be itemized, summarized receipts or credit card slips will not be accepted

- Must list all participants being paid for

Those expenses incurred or submitted for reimbursement that do not include proper supporting documentation will be the personal responsibility of the employee.

The corporation reserves the right to deny any professional leave expense that does not meet the guidelines listed below or does not seem reasonable or necessary in nature.

When traveling for professional reasons it would be expected that all staff members make good decisions that are in the best interest of the school corporation at all times.

**Mileage Reimbursement**

1. An employee that utilizes their personal vehicle to travel for reasons directly related to their job responsibilities may request reimbursement for mileage expenses.

2. All non-routine mileage reimbursement must be preapproved using the professional leave form and process.

3. All mileage will be reimbursed at the most current IRS mileage reimbursement rate.

4. An official mileage claim form must be submitted to the staff member's immediate supervisor for approval.

5. The mileage claim form must be completed legibly, in its entirety and signed by both the staff member and supervisor.

6. The staff member must always start and ultimately return to their physical work location.

7. Distance will be determined using the corporation mileage chart or the shortest route according to Google Maps.

8. Mileage claim forms must be submitted within 30 days from the date of travel.

**Meals**

Staff members may be reimbursed for meal expenses if one of the following conditions is met:

- A staff member is required to travel for reasons directly related to their job responsibilities more than 100 miles away from their physical work location.

- The staff member is required to stay overnight while more than 100 miles away from their physical work location.

1. All meal reimbursements must be preapproved using the professional leave form and process.

2. The employee must submit an itemized receipt to receive reimbursement for meals.

Meals will be reimbursed up to the following amounts:
Breakfast: 6:00 am – 11:00 am $10
Lunch: 11:00 am – 4:00 pm $10

9.03.2020

37

Dinner: 4:00 pm – 9:00 pm $20

Reimbursement amounts include a gratuity not to exceed 20% of the total charge.

- FTCSC will only reimburse for a meal once.
- If meals are included in conference registration fees or by hotels in the room charge, then an allowance will not be granted.
- Alcoholic beverages will not be paid for with school district funds.

**Lodging Accommodations**

1. All lodging accommodations must be pre-approved using the professional leave form and process.

- Lodging stays will only be considered for approval if the staff member is required to travel for reasons directly related to their job responsibilities when attending a multi-day conference more than 75 miles from their physical work location or attending a one-day conference more than 100 miles from their physical work location.

2. All lodging accommodations will be arranged by the Business Office Secretary.

3. The corporation will pay for the room fee and tax associated with the lodging stay only. Any additional charges will be the responsibility of the employee.

**Flights**

All air travel must be pre-approved using the professional leave form and process.

1. All flights will be arranged by the Business Office Secretary.

2. The corporation will pay for 1 bag to be checked.

**Transportation: Shuttle / Taxi**

The corporation will cover the expense of transportation between the airport and conference center or hotel at the destination.

1. All transportation between the airport and conference center or hotel at the destination must be preapproved using the professional leave form and process.

2. If available, a shuttle service is to be utilized and will be arranged by the Business Office Secretary.

3. If a shuttle service is not available then a taxi service may be utilized.

4. The employee must submit a receipt to receive reimbursement for taxi service.

5. Transportation to and from the local airport will be the responsibility of the employee.

6. Transportation to and from locations other than the destination airport will not be paid by the corporation.

**Car Rental**

1. All car rentals must be pre-approved using the professional leave form and process.

2. All car rentals must be arranged by the Business Office Secretary.

9.03.2020

**Parking**

The corporation will pay for parking costs if an employee is attending an event directly related to their job responsibilities during normal work hours.

      1. All parking expenses must be pre-approved using the professional leave form and process.

      2. All parking expenses need to be reasonable in nature.

      3. The employee must submit a receipt to receive reimbursement for parking expenses.

      4. Overnight parking at an airport will not be paid for by the corporation.

9.03.2020



Franklin Township Community School Corporation Mail - HIPAA request

<span style="color:red">**Exhibit P**</span>

Wes Tedrow <wes.tedrow@ftcsc.org>

---

## HIPAA request

**Wes Tedrow** <wes.tedrow@ftcsc.org>        Thu, Feb 27, 2020 at 6:44 PM
To: Jill Britt <jill.britt@ftcsc.org>

Dear Ms. Britt,

Thank you in advance for your timely response to this request for an official accounting of any and all disclosures of my PHI made by FTCSC in the previous six years. The following list identifies known individuals who received said PHI along with known information disclosed:

Darren L. Higginbotham
John K. McDavid
Amy A. Matthews
Kelly L. Foulk
Dawn A. Downer
Larry Walker
Judy L. Shore
Zachary T. Smith

- FMLA documentation including treatment provider notes
- Fitness-for-Duty report

For each individual above, please describe the reason and justification (including any applicable FTCSC policy and / or relevant state or federal law), for the disclosure and all related correspondence sent by mail, facsimile, or electronic communication. In addition, please provide the same for any and all similar disclosures of which I am currently unaware.

Thank you,

Wes Tedrow



Exhibit Q

Wes Tedrow <wes.tedrow@ftcsc.org>

## HIPAA request

**Jill Britt** <jill.britt@ftcsc.org>        Fri, Mar 6, 2020 at 10:35 AM
To: Wes Tedrow <wes.tedrow@ftcsc.org>
Cc: Kent Pettet <kent.pettet@ftcsc.org>

Mr. Tedrow,

In response to your question, please note that under 29 CFR § 1630.14(c), an employee can be required to take a medical examination when it comes to the ability of an employee to perform job-related functions.  In this particular circumstance, you declined the examination and this became a focus of a cancellation procedure.   As a result, the school corporation, including Board and Counsel, can then be made aware of information to review a teacher's request for a Board Conference under the cancellation process.

Thank you,

**Jill Britt**
**317-803-5007**
**Director of Human Resources**
**Franklin Township Community School Corporation**

[Quoted text hidden]



**Exhibit R**

Wes Tedrow <wes.tedrow@ftcsc.org>

---

## employee concern

**Jill Britt** <jill.britt@ftcsc.org>                                          Fri, Mar 13, 2020 at 11:03 AM
To: Wes Tedrow <wes.tedrow@ftcsc.org>
Cc: Kent Pettet <kent.pettet@ftcsc.org>

Mr. Tedrow,

Attached is the job description for the position you are currently filling at
MS-East as the eLearning Facilitator Teacher.  Regarding your job placement
for the remainder of the 2019-2020 school year, you have the option of
staying in the position that you are currently filling or you can move to the
3rd grade elementary teacher position at Kitley Elementary.  If you wish to
move to Kitley your first day to report for that position would be Monday,
April 6, 2020.  I need an answer on which position you wish to fill by Friday,
March 20, 2020 at 4pm ET so that I can communicate to the building
administrators the selection you have chosen.

Thank you,

**Jill Britt**
**317-803-5007**
**Director of Human Resources**
**Franklin Township Community School Corporation**

[Quoted text hidden]

---



eLearning Facilitator Teacher.pdf
522K