UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

WESLEY A. TEDROW,                    )
                                     )
                    Plaintiff        )
                                     )
        v.                           )        Cause No. 1:21-CV-453 RLM-MG
                                     )
FRANKLIN TOWNSHIP                    )
COMMUNITY SCHOOL                     )
CORPORATION, et al.                  )
                                     )
                    Defendants       )


<u>OPINION AND ORDER</u>

Wesley Tedrow has sued the Franklin Township Community School Corporation, Jill Britt, and Melissa Morris, alleging violations of various federal employment and nondiscrimination laws, the U.S. Constitution, state tort law, and contract law. The defendants move to dismiss sixteen of eighteen counts in Mr. Tedrow's first amended complaint. For reasons explained in this opinion, the court grants the motion as to Counts 7, 8, 9, 11, 12, 13, 14, 16, 17, and 18, and denies the motion as to Counts 1, 3, 4, 6, 10, and 15 [Doc. No. 46].[1]

---

[1] Mr. Tedrow's complaint sets forth its counts in Roman numeral. This opinion uses the corresponding Arabic numbers for the reader's sake.

## I. Background

The court presents the facts based on Mr. Tedrow's allegations, which must be accepted as true on a Rule 12(b)(6) motion to dismiss. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

It is the summer of 2015. Wesley Tedrow starts teaching third grade at Arlington Elementary School of the Franklin Township School Corporation. His school has about four male teachers and twenty-five female teachers. Around October or November 2017, Mr. Tedrow requests and is granted six weeks of leave under the Family Medical Leave Act for a mental disability.

Mr. Tedrow receives the first negative review of his career soon after returning from leave. Arlington Elementary principal Melissa Morris tells Mr. Tedrow he has performance issues and that he seems "not right in the head." Principal Morris marks him as "ineffective" in a performance evaluation two months later. Principal Morris amends the evaluation to "effective" after Mr. Tedrow disputes some of her statements with the help of the Franklin Township Education Association.

Throughout the year, Principal Morris and other administrators call Mr. Tedrow aggressive and intimidating and engage in stereotyping because of his masculine physique and voice. The School Corporation informs Mr. Tedrow that an instructional assistant felt uncomfortable around him because of his physique, deep voice, and masculine aggression. Despite the instructional

assistant's supposed complaints, Mr. Tedrow and the assistant continue to have a good working relationship in the classroom.

A couple weeks later, Principal Morris orders Mr. Tedrow to leave his classroom and attend a surprise meeting with Jill Britt, the School Corporation's human resources director. Ms. Britt delivers a letter to Mr. Tedrow placing him on administrative leave pending a fitness-for-duty exam. Ms. Britt refuses to tell Mr. Tedrow why he must go on leave and undergo the exam. None of the teachers who are women or who aren't disabled are placed on leave or undergo a fitness-for-duty exam in that same academic year.

After the School Corporation hires an examiner for Mr. Tedrow's fitness-for-duty exam, Ms. Britt sends some of Mr. Tedrow's health records, such as psychotherapy and treatment notes from his earlier FMLA request, to the examiner. She shares exaggerated allegations made against Mr. Tedrow and tells the examiner she thinks Mr. Tedrow illegally uses drugs for weightlifting.

Meanwhile, Mr. Tedrow completes his part of the fitness-for-duty exam. He sees that he's required to sign a blanket release for all medical records. Mr. Tedrow tells the School Corporation that he thinks the release is overly broad, invades his privacy, and would violate the Americans with Disabilities Act and the Genetic Information Nondiscrimination Act since both limit what disability-related or genetic information an employer can ask about. The School Corporation replies that unless he agrees to the release, he'll be "deemed resigned from employment." When an Indiana State Teachers Association

3

representative intervenes, the School Corporation backs down from firing Mr. Tedrow. Mr. Tedrow provides a narrower release, and the School Corporation rejects it.

Mr. Tedrow files a charge with the Equal Employment Opportunity Commission and Indiana Civil Rights Commission in November 2019. He claims the School Corporation discriminated and retaliated against him when it placed him on leave, in violation of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act.

A short while later, the School Corporation notifies Mr. Tedrow that it's made the preliminary decision to terminate his employment because he was insubordinate when he refused the medical release. The School Corporation adds that Mr. Tedrow isn't fit for duty, even though the exam was inconclusive because the examiner didn't have all of Mr. Tedrow's medical records.

In response, Mr. Tedrow submits fitness-for-duty recommendations from his primary care physician and psychiatrist. The School Corporation accepts the recommendations in December 2019 and offers to reinstate Mr. Tedrow as a teacher, but tells him he'd be involuntary transferred to teach a different grade in a different school. The School Corporation also tells him he'd need to sign a "Last Chance Agreement," which would dismiss pending EEOC charges and relinquish future claims. Mr. Tedrow declines the agreement because he thinks it is retaliatory and would violate Title VII. The School Corporation resumes the process of terminating Mr. Tedrow.

Mr. Tedrow looks for new teaching positions during the administrative leave. He gets two job offers with better pay. Before he can accept, the schools ask the School Corporation about Mr. Tedrow. The School Corporation shares false and misleading information, casting Mr. Tedrow in a bad light. As a result, the schools rescind their offers.

Finally in January 2020, the School Corporation holds a hearing to decide whether to cancel Mr. Tedrow's teaching contract. Mr. Tedrow and his attorney attend the hearing. The School Corporation claims that Mr. Tedrow's attorney had attended a pre-hearing conference call where the School Corporation explained that Mr. Tedrow would be able to call and examine witnesses and cross-examine the School Corporation's witnesses at the January hearing. Mr. Tedrow's attorney attended no such meeting and wasn't told in advance that they'd be able to call and examine witnesses. Nevertheless, colleagues, parents, and students show up and testify on Mr. Tedrow's behalf. Others send written testimony in support of Mr. Tedrow.

Ten days later the School Corporation votes five to zero to reverse course and reinstate Mr. Tedrow instead of firing him. It's not until February 5 that Mr. Tedrow receives more information. An armed officer arrives at Mr. Tedrow's home unannounced and delivers a letter: Mr. Tedrow is to report to school on February 10 to begin as an "E-Learning Facilitator."

When Mr. Tedrow shows up on February 10, his new principal is confused—he doesn't know of an E-Learning Facilitator position. The principal

has Mr. Tedrow sub in for a seventh-grade language arts teacher who's out on FMLA leave. For the rest of the year, Mr. Tedrow doesn't have a class of his own in a grade he's used to but is rotated around to substitute for others as needed. Mr. Tedrow worries that he's effectively been demoted and he's becoming less marketable since he can't fully develop his teaching skills and reputation.

Upset with this new arrangement, Mr. Tedrow files a grievance on February 11, 2020. The School Corporation never responds to Mr. Tedrow or meets with him to discuss the de facto demotion. About a month later, Mr. Tedrow asks Ms. Britt for a list of his protected health information that was disclosed for the fitness-for-duty exam and for information about the E-Learning Facilitator role. He learns that some protected health information was released because he declined the waiver. He also finds metadata in the job description showing the document was made on February 11, right after he filed a grievance. He suspects the job description was created as a pretext for what the School Corporation otherwise intended as punishment.

Since he was first place on administrative leave, Mr. Tedrow hasn't been able to retrieve personal possessions he left at Arlington Elementary. The School Corporation closes its schools in March 2020 because of the COVID-19 pandemic and Mr. Tedrow is finally allowed to get his belongings from Arlington Elementary in May 2020. Some of his belongings are missing and never reappear.

Mr. Tedrow files a lengthier charge with the EEOC and Indiana Civil Rights Commission later that year. This time he claims the School Corporation

discriminated and retaliated against him in violation of Title VII, the ADA, and the Genetic Information Nondiscrimination Act.

During the COVID-19 pandemic, Mr. Tedrow is reassigned to teach virtual fourth-grade math at Kitley Intermediate School. His principal evaluates him as "effective" in January 2021. The EEOC issues two right to sue letters in February and about two weeks later, Mr. Tedrow's principal rescinds his "effective" evaluation. The principal places Mr. Tedrow on a Teacher Improvement Plan. Mr. Tedrow suspects this is just an excuse to restart the termination process, yet again discriminating and retaliating against Mr. Tedrow. Mr. Tedrow files this lawsuit at the end of February.

## II. STANDARD OF REVIEW

When considering a Rule 12(b)(6) motion to dismiss, the court construes the complaint in the light most favorable to the nonmoving party, accepts all well-pleaded facts as true, and draws all inferences in the nonmoving party's favor. Reynolds v. CB Sports Bar, Inc., 623 F.3d 1143, 1146 (7th Cir. 2010). But Fed. R. Civ. P. 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Bell Atlantic v. Twombly, 550 U.S. at 570). A claim is plausible if "the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Bell Atlantic v. Twombly, 550 U.S. at 556). The plaintiff must provide some specific facts to support any legal claims asserted. McCauley v. City of Chi., 671 F.3d 611, 616 (7th Cir. 2011). The plaintiff "must give enough details about the subject-matter of the case to present a story that holds together." Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir. 2010). When a moving party includes evidence beyond the pleadings, the court must convert a motion to dismiss into a Rule 56 motion for summary judgment. Fed. R. Civ. P. 12(d). But a plaintiff has more flexibility in responding to a motion to dismiss and may present some additional evidence to show that the allegations are plausible. Kuebler v. Vectren Corp., 13 F.4th 631 (7th Cir. 2021) (citing Geinosky v. City of Chi., 675 F.3d 743, 745 n.1 (7th Cir. 2012)).

### III. DISCUSSION

#### A. Title VII and ADA Claims

Mr. Tedrow claims the School Corporation violated Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act by discriminating against, harassing, and retaliating against him because of his gender and disability. The School Corporation moves to dismiss Mr. Tedrow's Title VII discrimination claim (Count 1), Title VII retaliation claim (Count 3), ADA

discrimination claim (Count 4), and ADA retaliation claim (Count 6). The School Corporation doesn't move to dismiss either harassment claim (Counts 2 and 5).

The School Corporation argues that Mr. Tedrow hasn't stated a claim for discrimination under Title VII or the ADA because the alleged adverse employment actions aren't materially adverse. Mr. Tedrow alleges the School Corporation put him on administrative leave, had him undergo a broad and invasive fitness-for-duty examination, refused to give a job reference on his behalf to other potential employers despite a practice of doing so for other employees, demoted him under the guise of a lateral transfer, and reassigned him to a substitute teacher position. The School Corporation argues that none of these employment actions fit into the three categories of materially adverse employment actions recognized by the court of appeals, so they're mere nonactionable inconveniences. See Rhodes v. Ill. Dep't of Transp., 359 F.3d 498, 504–505 (7th Cir. 2004). The School Corporation cites a plethora of cases in which actions similar to those alleged by Mr. Tedrow weren't materially adverse. Ortiz v. Werner Enters., Inc., 834 F.3d 760 (7th Cir. 2016); Lucero v. Nettle Creek Sch. Corp., 566 F.3d 720 (7th Cir. 2009); Nichols v. S. Ill. Univ.-Edwardsville, 510 F.3d 772 (7th Cir. 2007); Lewis v. City of Chi., 496 F.3d 645 (7th Cir. 2007); O'Neal v. City of Chi., 392 F.3d 909 (7th Cir. 2004); Rhodes v. Ill. Dep't of Transp., 359 F.3d 498 (7th Cir. 2004); Herrnreiter v. Chi. Hous. Auth., 315 F.3d 742 (7th Cir. 2002); Silk v. City of Chi., 194 F.3d 788 (7th Cir. 1999); Smart v. Ball State Univ., 89 F.3d 437 (7th Cir. 1996).

The fatal flaw in this argument is that despite their similarities to Mr. Tedrow's allegations, each case involved a summary judgment motion, not a motion to dismiss. The severity of an adverse employment action is an appropriate inquiry at summary judgment, but not at the motion-to-dismiss stage. Carlson v. CSX Transp., Inc., 758 F.3d 819, 829–830 (7th Cir. 2014). A plaintiff can state a claim for employment discrimination if the allegations include some specific instances of poor treatment, even if the allegations might otherwise theoretically be too "conclusory" or might prove insufficiently intolerable at summary judgment or trial. Id.

Mr. Tedrow alleges that the School Corporation placed him on administrative leave pending the results of a fitness-for-duty examination while no other coworkers who were women or not disabled had to do so. He alleges that he was reassigned to a substitute teacher role, put on administrative leave pending an investigation by the school, and reassigned to a middle school teacher role because of his sex and disability. These are all allegations of poor treatment. If that weren't enough, some of Mr. Tedrow's allegations satisfy the School Corporation's proposed standard. Mr. Tedrow alleges that reassignment to a substitute teacher role was effectively a demotion because it had fewer and lower qualifications, diminished his job responsibilities and hindered career growth and development, as well as his reputation. These allegations fall squarely into the category of "cases in which a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects

by preventing [him] from using [his] skills and experience, so that the skills are likely to atrophy and [his] career is likely to be stunted." O'Neal v. City of Chi., 392 F.3d 909, 911 (7th Cir. 2004). Mr. Tedrow has sufficiently alleged poor treatment at this stage.[2]

The School Corporation argues in a footnote that Mr. Tedrow's retaliation allegations should be dismissed because Mr. Tedrow alleges two EEOC charges, which are protected activity, but "makes no attempt to tie those charges to any of the Defendants' alleged retaliatory conduct." [Doc. No. 47 at 6, n.1]. The argument ignores that Mr. Tedrow's alleges the School Corporation placed him on an improvement plan purposely designed to punish him two weeks after he received right-to-sue letters. This might prove insufficient at trial, but it's a plausible claim of retaliation for protected activity relating to his sex and disability.

The court denies the motion to dismiss as to Counts 1, 3, 4, and 6.


### B.    FMLA Claims

Mr. Tedrow claims the School Corporation discriminated against, harassed, and retaliated against him in violation of the Family and Medical Leave Act (Counts 7, 8, and 9). Mr. Tedrow alleges that in October or November 2017 he requested six months of medical leave under the FMLA and the School

---

[2] The court declines the School Corporation's invitation to decide which alleged adverse employment actions survive the motion to dismiss.

Corporation granted his request. He alleges various adverse employment actions, discussed earlier, and alleges that Ms. Britt disclosed Mr. Tedrow's protected health information, including information related to his 2017 FMLA leave, to the fitness-for-duty examiner. The School Corporation moves to dismiss all three claims for failure to state a claim.

The FMLA requires covered employers to give medical or family leave to eligible employees. 29 U.S.C. § 2612(a)(1). Employers are prohibited from interfering with or retaliating for an employee's use or attempted use of FMLA leave. Pagel v. Tin Inc., 695 F.3d 622, 626 (7th Cir. 2012) (citing 29 U.S.C. § 2615(a)). An employer who denies FMLA leave, uses FMLA leave as a negative factor in employment actions, or discourages an employer from using FMLA leave is liable for FMLA interference. Preddie v. Bartholomew Consol. Sch. Corp., 799 F.3d 806, 818 (7th Cir. 2015) (citing 29 C.F.R. § 825.220; Pagel v. Tin Inc., 695 F.3d at 631). An employer who discriminates against an employee for engaging in protected activity, such as seeking FMLA leave or opposing practices that are unlawful under the FMLA, is liable for FMLA retaliation. 29 U.S.C. § 2615(a).

The School Corporation argues Mr. Tedrow's FMLA claims must be dismissed because none of his allegations amount to FMLA interference or retaliation. The School Corporation first argues that Mr. Tedrow's request for FMLA leave in 2017 can't be the basis of any claim because Mr. Tedrow alleges that the School Corporation granted the request. Mr. Tedrow seems to concede that his 2017 request doesn't serve as the basis for any claim. [Doc. No. 52 at

32]. The School Corporation then argues that any adverse action happened almost two years later, so a retaliation claim is implausible. Mr. Tedrow doesn't rebut this argument and the School Corporation is correct that such a long gap between protected activity and an adverse employment action is presumptively implausible. Carlson v. CSX Transp., Inc., 758 F.3d 819, 828 (7th Cir. 2014).

Mr. Tedrow's only response to the School Corporation's arguments is that the School Corporation violated the FMLA by using medical documents that he had disclosed for his FMLA request to discriminate against him on the basis of disability. He alleges that Ms. Britt released his FMLA files to the fitness-for-duty examiner belatedly and without authorization, which shows she sought to sabotage his examination. He claims this shows discrimination on the basis of disability and retaliation for his opposition to the medical releases. His argument might establish a claim under the ADA or Title VII, but it doesn't explain how using records related to the FMLA as a means of violating other laws becomes an FMLA violation. See 29 U.S.C. § 2615(a)(2) ("It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful *by this title*.") (emphasis added). By focusing only on this argument, Mr. Tedrow waives all other arguments. Alioto v. Town of Lisbon, 651 F.3d 715, 721 (7th Cir. 2011).

The court grants the motion to dismiss as to Counts 7, 8, and 9.

### C. Genetic Information Nondiscrimination Act Claim

Mr. Tedrow claims the School Corporation discriminated against, harassed, and retaliated against Mr. Tedrow in violation of the Genetic Information Nondiscrimination Act ("GINA") (Count 10). He alleges the School Corporation pressed him to sign a medical records release that he objected to because he believed it was overly broad and intrusive and would violate GINA's prohibition against seeking to acquire genetic information in the form of family medical history. See 42 U.S.C. § 2000ff-1(b). Mr. Tedrow included this objection in his EEOC charge, and he alleges the School Corporation retaliated because of the charge.

The School Corporation moves to dismiss Mr. Tedrow's GINA claim. The School Corporation argues that Mr. Tedrow doesn't allege that the School Corporation ever acquired his genetic information, so it would be impossible for the School Corporation to discriminate based on information it never had. See id. §§ 2000ff-1(a)(1). The School Corporation then argues that its request for Mr. Tedrow to provide information to a third-party examiner couldn't violate GINA because the School Corporation didn't request the information for itself. Finally, the School Corporation reiterates its argument that none of its actions constitute an adverse employment action.

Whether the alleged adverse employment actions were sufficiently severe generally is a question for summary judgment or trial, as discussed earlier. The School Corporation's argument about the fitness-for-duty examiner being a third

14

party runs against the text of GINA. Employers covered by GINA include agents of the employer. Id. §§ 2000ff(2)(B)(i), 2000e(b); Jackson v. Regal Beloit Am., Inc., No. 16-134, 2018 WL 3078760, at *16 (E.D. Ky. June 21, 2018). Mr. Tedrow alleges that the fitness-for-duty examiner sought genetic information on behalf of the School Corporation, so the examiner's behavior could likely be imputed to the School Corporation.

Separately, the School Corporation's arguments don't address Mr. Tedrow's allegations of retaliation. GINA not only prohibits employers generally from requesting genetic information from employees, but also prohibits employers from retaliating against employees for opposing unlawful action. 42 U.S.C. §§ 2000ff-1(b), 2000ff-6(f). Mr. Tedrow has plausibly alleged that he opposed what he believed was a violation of GINA and that he was punished for it.

The court denies the motion to dismiss as to Count 10.


### D. Due Process Claims

Mr. Tedrow alleges the School Corporation violated his right to due process under the Fifth and Fourteenth Amendments to the Constitution (Count XI). His complaint connects four sets of factual allegations to his due process rights. A plaintiff can claim a due process violation if the state deprives him of a property interest without adequate procedure. 145 Fisk, LLC v. Nicklas, 986 F.3d 759, 768 (7th Cir. 2021). A public employee's continued employment may constitute

a property interest. Vargas v. Cook Cnty. Sheriff's Merit Bd., 952 F.3d 871, 874 (7th Cir. 2020) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538–541 (1985)). The School Corporation argues none of the allegations amount to a due process violation.

First, Mr. Tedrow alleges that after he objected to the medical releases required for the fitness-for-duty exam, the School Corporation threatened to fire him if he didn't ultimately agree to sign the releases. He alleges the School Corporation abandoned this position when a union representative and Mr. Tedrow's attorney intervened, but it was nonetheless an attempt to deprive Mr. Tedrow of his due process rights.

Next, Mr. Tedrow alleges the School Corporation didn't provide advance notice that he'd be able to call and cross-examine witnesses at the January 13, 2020, school board meeting regarding cancellation of his teaching contract, and that this failure to inform violated his due process rights.

Third, Mr. Tedrow alleges he filed a grievance on February 11, 2020, regarding his reassignment and that the School Corporation never responded nor discussed the reassignment with or disclosed reasons for reassignment to him, in violation of his procedural due process rights.

Lastly, Mr. Tedrow alleges the School Corporation prohibited him from accessing personal property left at the school for more than seven months and when he was permitted to retrieve his property, some items were missing and still haven't been returned.

The School Corporation offers several arguments for why Mr. Tedrow's due process claims must be dismissed and asserts that Mr. Tedrow hasn't meaningfully responded to their arguments, waiving his claims. See Lee v. Ne. Ill. Reg'l Commuter R.R. Corp., 912 F.3d 1049, 1054 (7th Cir. 2019).

As to Mr. Tedrow's personal property claim, the School Corporation argues Mr. Tedrow didn't comply with Indiana's notice requirements. In Indiana, a person suing a school must first provide notice of the alleged harm to the school and propose a remedy. Ind. Code §§ 34-13-3.5-4, -5. A court must dismiss a claim against a school if the plaintiff doesn't comply with the statutory notice requirements. Id. § 34-13-3.5-7; Smith v. Franklin Twp. Cmty. Sch. Corp., 151 N.E.3d 271, 272–273 (Ind. 2020). Mr. Tedrow claims in his opposition brief that he emailed Ms. Britt about getting his belongings back, but he doesn't explain whether or how that satisfies the statutory notice requirements, doesn't cite the relevant statutes, and claims in a conclusory manner that his due process rights were violated when he was deprived his personal property.

The School Corporation then argues that Mr. Tedrow's other due process claims must be dismissed because he doesn't allege any deprivation of a constitutionally protected interest. The School Corporation argue his first set of allegations about the medical releases don't state a claim because by Mr. Tedrow's own account, this was an attempt to deprive Mr. Tedrow of due process, not an actual deprivation. The School Corporation argues his second allegation of failure-to-notify fails because even though he wasn't given advance notice

about witnesses, he received due process because colleagues, students, and students' parents testified on his behalf. Even if this process wasn't enough, the School Corporation changed tack and didn't fire him, so he wasn't deprived of any property interest. Finally, the School Corporation argues that his reassignment was consistent with his contract, so even if the defendants didn't meet with him or explain the decision, he wasn't deprived of a constitutionally protected interest.

Mr. Tedrow's response is sparse. He mentions that the "Last Chance Agreement," which would have required him to waive future claims, would violate due process had he signed it. He then repeats some of his allegations that the School Corporation didn't respond to his grievance. He doesn't explain how that amounts to a constitutional deprivation, rather than a breach of contract, or how a de facto demotion is a deprivation of a property interest.

Mr. Tedrow hasn't stated a claim for due process violations under the Fifth or Fourteenth Amendments. As explained earlier, he hasn't alleged compliance with Indiana's prerequisites to filing a suit for his personal property claim and doesn't explain how his email satisfies the statutes. His claim about the medical releases and waiver of claims that the School Corporation tried to get him to sign are alleged to be due process violations, had he signed them. Mr. Tedrow didn't sign them and doesn't respond to the School Corporation's argument that an attempted deprivation can't violate due process rights. Mr. Tedrow's failure-to-notify claim doesn't state a claim because even if Mr. Tedrow was provided

inadequate process, he doesn't allege that it resulted in any deprivation of a property or liberty interest since the School Corporation changed its mind and didn't fire him. Nor does he connect the failure-to-notify claim to any later alleged deprivations. Finally, Mr. Tedrow doesn't address the defendants' argument that transferring him was consistent with his contract, so he wasn't deprived of a property interest. Although Mr. Tedrow separately argues his transfer was a demotion, he focuses on why a de facto demotion is sufficient for employment discrimination claims, not why he had a constitutionally recognized property interest in a certain teaching position. To the extent Mr. Tedrow's due process claims might be plausible for other reasons, he has waived those claims by responding to the School Corporation's arguments without engaging in the substance of the arguments. Lee v. Ne. Ill. Reg'l Commuter R.R. Corp., 912 F.3d 1049, 1054 (7th Cir. 2019).

The court grants the motion to dismiss as to Count 11.

### E. State Law Tort Claims

Mr. Tedrow brings state law tort claims against the School Corporation (Counts 12, 13, 14), Ms. Britt in an individual capacity (Counts 14, 17, and 18), and Principal Morris in an individual capacity (Counts 17 and 18). [3] The

---

[3] Claims against the school are for invasion of privacy/false light, negligent disclosure of protected health information, and defamation. Claims against Ms. Britt are for intentional disclosure of protected health information, defamation, and abuse of

defendants argue that each of these claims must be dismissed because they're procedurally barred by the Indiana Tort Claims Act.

The Indiana Tort Claims Act imposes certain requirements on individuals seeking to bring tort claims against Indiana's political subdivisions. A person bringing a tort claim against a political subdivision of the state must first file a notice of the claim with the governing body of the political subdivision within 180 days of the loss. Ind. Code § 34-13-3-8. The government entity must approve or deny the claim within ninety days of filing, and the plaintiff can only sue once the claim has been denied in whole or in part. Id. §§ 34-13-3-11, -13. A plaintiff's claims are barred if the plaintiff hasn't satisfied the ITCA's notice requirements. J.A.W. v. State, 650 N.E.2d 1142, 1153 (Ind. Ct. App. 1995).

The ITCA also grants tort immunity to employees of the state's political subdivisions, unless the employee acts criminally, clearly outside the scope of employment, maliciously, willfully and wantonly, or in a manner calculated to personally benefit the employee. Ind. Code. § 34-13-3-5(c). As with claims against political subdivisions, a government employee sued individually is immune if the plaintiff doesn't comply with the ITCA. Ball v. City of Indianapolis, 760 F.3d 636, 645 (7th Cir. 2014).

Mr. Tedrow alleges he exhausted all administrative remedies before filing the complaint by filing two charges with the EEOC and receiving right to sue

---

power/intentional infliction of emotional distress. Claims against Principal Morris are for defamation and abuse of power/intentional infliction of emotional distress.

letters. [Doc. No. 38 at 2]. The EEOC charges allege violations of Title VII, the ADA, and GINA. The defendants contend these charges don't comply with the ITCA because they weren't filed with the School Corporation's governing body and don't describe his tort claims. They further argue that Ms. Britt and Ms. Morris are immune because Mr. Tedrow doesn't allege any exceptions to employee immunity in the EEOC charges or in his complaint.

Mr. Tedrow doesn't refute the defendants' arguments. He makes just two arguments. First, the court can hear the claims under its supplemental jurisdiction. Second, he satisfied the ITCA by filing charges with the EEOC and the Indiana Civil Rights Commission. He cites to Section 6 of the ITCA, which requires that notice be filed with the attorney general and the state agency involved with a loss within 270 days of the loss. Ind. Code § 34-13-3-6.

Mr. Tedrow's arguments miss the mark for a few reasons. The question of supplemental jurisdiction answers whether a federal court is authorized to adjudicate certain types of cases. The defendants concede that the court has supplemental jurisdiction. The requirements of the ITCA, by contrast, determine whether a plaintiff is authorized to bring certain claims in any court, state or federal. The court's supplemental jurisdiction doesn't relieve Mr. Tedrow of any procedural requirements imposed by the ITCA.

Mr. Tedrow's argument about notice to the Indiana Civil Rights Commission also falls short. Section 6 of the ITCA, which he cites, governs suits against the state and its agencies. Id. Mr. Tedrow's claims aren't against the

state; his claims are against the School Corporation and two of its employees, which are political subdivisions. The ITCA requires that he file notice with the political subdivision's governing body, so filing notice with the Indiana Civil Rights Commission doesn't satisfy the ITCA. Ind. Code § 34-13-3-8; Alexander v. City of S. Bend, 256 F. Supp. 2d 865, 876 (N.D. Ind. 2003) (notice filed with the attorney general wasn't adequate for a claim against a city). Mr. Tedrow doesn't make any other arguments about why his allegations as to the EEOC charges are sufficient under the ITCA, waiving any other arguments. Alioto v. Town of Lisbon, 651 F.3d 715, 721 (7th Cir. 2011).

The court grants the motion to dismiss as to Counts 12-14 and 16-18.

### F. Breach of Contract

Mr. Tedrow alleges the School Corporation breached employment contracts it had with Mr. Tedrow (Count 15). He alleges that his regular teacher contract, the collective bargaining agreement, the staff handbook, and the teacher evaluation system all constituted contracts and that the School Corporation breached each in various ways. The School Corporation moves to dismiss.

First, Mr. Tedrow alleges the School Corporation breached the regular teacher contract by effectively demoting him to a substitute teacher. Then he alleges that the collective bargaining agreement required the School Corporation

to respond to teachers' grievances, but that the School Corporation never responded to Mr. Tedrow's February 11, 2020, grievance. Next, he claims the staff handbook required the School Corporation to meet and discuss reassignments with affected teachers and to disclose reasons for any reassignment, but that the School Corporation didn't fulfill those obligations. Lastly, he alleges one of the School Corporation's teachers rescinded an "effective" rating in the teacher evaluation system, breaching that contract.

The School Corporation argues that Mr. Tedrow hasn't stated a claim for breach of contract. It first argues that the regular teacher contract doesn't prohibit the School Corporation from assigning a teacher to a substitute role, so the allegations don't constitute a breach. The School Corporation then argues that the staff handbook and teacher evaluation system aren't contracts between the parties, so neither could be breached. Finally, it argues that because Mr. Tedrow doesn't allege that he properly filed a grievance under the collective bargaining agreement, the School Corporation didn't owe him a response, so his allegations don't amount to a breach of the collective bargaining agreement.

Without addressing each of the alleged contracts, the court can determine that Mr. Tedrow has plausibly alleged a breach of the collective bargaining agreement. Mr. Tedrow alleges that he filed a grievance regarding his reassignment or demotion and that the School Corporation didn't timely respond as required by the collective bargaining agreement. He includes an email that he

claims is a grievance. The School Corporation argues the email shows he didn't satisfy the contract's requirements for filing a grievance, so the School Corporation wasn't obligated to respond and didn't breach the contract.

Mr. Tedrow generally alleges that he performed all conditions precedent to enforcement of the contract and his email doesn't disprove those allegations. A plaintiff can generally allege that he performed his half of a contract at the motion-to-dismiss stage. Stearns v. Cons. Mgmt., Inc., 747 F.2d 1105, 1112 (7th Cir. 1984); see Fed. R. Civ. P. 9(c). Even though Mr. Tedrow's exhibit email suggests his grievance might not have complied with the collective bargaining agreement, it doesn't rule out that Mr. Tedrow performed the conditions required of him to enforce the contract. See Topping v. Fry, 147 F.2d 715, 718 (7th Cir. 1945). Nor does Mr. Tedrow concede that his email was insufficient or that he didn't perform any conditions precedent. Whether Mr. Tedrow filed a grievance in compliance with the contract is a question for summary judgment or trial. Stearns v. Cons. Mgmt., Inc., 747 F.2d at 1112.

The court denies the motion to dismiss as to Count 15, without assessing the merits of the other breach of contract allegations.

IV. CONCLUSION

For the foregoing reasons, the court:

24

(1) GRANTS in part the motion to dismiss the first amended complaint and DISMISSES Counts 7, 8, 9, 11, 12, 13, 14, 16, 17, and 18;

(2) DENIES in part the motion to dismiss the amended complaint as to Counts 1, 3, 4, 6, 10, and 15 [Doc. No. 46]; and

(3) DENIES as moot the motion to dismiss Mr. Tedrow's original complaint. [Doc. No. 17].

SO ORDERED.

ENTERED:   March 14, 2021

    /s/ Robert L. Miller, Jr.
Judge, United States District Court

Distribution:  All electronically registered counsel of record

25